Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wanda Báez Díaz; et al<br><br>    Recurridos<br><br>               v.<br><br>Estado Libre Asociado de Puerto Rico,<br>et al<br><br>      Peticionarias | Apelación<br><br>2010 TSPR 127<br><br>179 DPR \_\_\_\_ |

Número del Caso: AC-2008-48

Fecha: 13 de julio de 2010

Tribunal de Apelaciones:

Región Judicial de San Juan – Panel III

Panel integrado por su presidenta, la Juez Bajandas Vélez, y los Jueces Aponte Hernández y Morales Rodríguez

Oficina de la Procuradora General:

> Lcda. Karla Z. Pacheco Álvarez
> Procuradora General Auxiliar
>
> Lcda. Sylvia Roger Stefani
> Procuradora General Auxiliar

Abogados de la Parte Recurrida:

> Lcdo. José R. Roqué Velázquez
> Lcdo. Rafael Rodríguez Rivera
> Lcdo. Luis A. Henriquez Carrero

Materia: Injuction Preliminar Permanente y Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda Báez Díaz; et al

      Recurrido

        v.

                                AC-2008-048

Estado Libre Asociado de Puerto Rico, et al

      Peticionarios


Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez


San Juan, Puerto Rico, a 13 de julio de 2010.

Por medio del presente recurso, la Administración de Corrección y Rehabilitación, en adelante Administración de Corrección, nos solicita la revisión de la Sentencia emitida por el Tribunal de Apelaciones. El foro apelativo intermedio dictaminó que las Reglas 6, 7, 14, 16, 20, 23 y 24(C) del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios, en adelante el Reglamento 6994, son nulas.[1] Ello, por entender que

---

[1] Reglamento de la Administración de Corrección, núm. 6994 de 29 de junio de 2005, R. 6, 7, 11, 14, 16, 20, 23, 24(C).

el Reglamento 6994 priva a los confinados de un debido proceso de ley y violenta disposiciones de la Ley de Procedimiento Administrativo Uniforme, en adelante la L.P.A.U..[2]

Examinemos los hechos y el trámite procesal que originaron la presente controversia.

I

El 31 de octubre de 2005, entró en vigor el Reglamento 6994 en todas las instituciones penales de Puerto Rico. El Reglamento 6994 fue creado en virtud de la Ley Núm. 27 de 20 de julio de 1989, conocida como la Ley Orgánica de la Administración de Corrección.[3] La Administración de Corrección alegó que la intención administrativa al aprobar el Reglamento 6994 fue proveerle a las autoridades carcelarias un mecanismo flexible y eficaz para lograr imponer sanciones disciplinarias a los confinados, sumariados y/o personas que se encuentren cumpliendo con algún programa de desvío que incurran en violaciones a las normas disciplinarias de la Administración de Corrección.[4]

El 26 de mayo de 2006, siete (7) confinados, siendo estos la Sra. Wanda Báez Díaz, el Sr. Leslie J. Olivero González, el Sr. Antonio Vázquez Sánchez, el Sr. Juan Ortiz Vargas, el Sr. Alexis Rivera Delgado, el Sr. Miguel Méndez

---

[2] 3 L.P.R.A. § 2101 *et seq.*

[3] 4 L.P.R.A. § 1101 *et seq.*

[4] *Véase*, Apéndice en las págs. 77-78.

Mantilla y el Sr. Héctor Tapia Rosado, en adelante los apelados, presentaron, conjuntamente, ante el Tribunal de Primera Instancia una solicitud de sentencia declaratoria e interdicto permanente en contra de la Administración de Corrección, impugnando el Reglamento 6994. Específicamente, alegaron que el Reglamento 6994 viola lo dispuesto en la L.P.A.U., *supra*, respecto a lo siguiente:

(1) **El término de la notificación de la vista administrativa**, ello, porque el Reglamento 6994 dispone que la vista se le notificará al confinado por lo menos un (1) día laborable antes de celebrarse la misma, mientras que la L.P.A.U., *supra*, provee no menos de quince (15) días de anticipación, excepto por causa debidamente justificada.[5]

(2) **El contenido de la notificación de la vista**, toda vez que la L.P.A.U., *supra*, dispone que se incluya fecha, hora, lugar y propósito de la vista, referencias a las citas legales o reglamentarias que autorizan la celebración de la vista y los debidos apercibimientos, mientras que el documento oficial utilizado en estos casos sólo informa fecha, hora y lugar de la vista.[6]

(3) **La asistencia de abogado en la vista**, dado a que el Reglamento 6994 sólo permite la representación legal en las vistas de revocación de programas de desvío, mientras que la L.P.A.U., *supra*, dispone que las partes podrán

---

[5] 3 L.P.R.A. § 2159.

[6] *Íd.*

comparecer por derecho propio o asistidas de abogado.[7]

(4) **El descubrimiento de prueba cuando los procedimientos son iniciados por la agencia y el derecho a presentar prueba a su favor**.[8] Los apelados argumentaron que aunque el Reglamento 6994 provee para la presentación de testigos y el derecho a presentar prueba, impone como condición que los testigos sean pertinentes y esenciales para el caso, dejando la decisión a discreción del oficial examinador de vistas disciplinarias.

(5) **El término para solicitar reconsideración**, ya que el Reglamento 6994 dispone un término de cinco (5) días y la L.P.A.U., *supra*, establece veinte (20) días desde el archivo de la notificación.[9]

(6) **El derecho a una adjudicación imparcial**,[10] debido a

---

[7] *Íd.* En *Álamo v. Administración de Corrección*, 2009 T.S.P.R. 6, 175 D.P.R. _, res. el 15 de enero de 2009, **este Tribunal pautó que los confinados, que no se encuentren participando de un programa de desvío, comunitario o de pases extendidos, no tienen derecho a asistencia de abogado en los procedimientos disciplinarios de la Administración de Corrección**. Para la revocación de algún programa de desvío o de sentencia suspendida, *véase*, *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985).

[8] 3 L.P.R.A. §§ 2158 y 2151(2)(B).

[9] 3 L.P.R.A. § 2165. **Este asunto fue atendido y resuelto por este Tribunal en *López v. Administración de Corrección*, 2008 T.S.P.R. 121, 174 D.P.R. _ (2008), res. el 15 de julio de 2008. En el referido caso pautamos que el término aplicable para presentar una solicitud de reconsideración de una determinación final de un procedimiento disciplinario es el término dispuesto en la L.P.A.U., veinte (20) días.**

[10] 3 L.P.R.A. § 2151(2)(C).

que el Comité de Disciplina Institucional se compone del Comandante de la Guardia y de dos (2) empleados de la Administración de Corrección con funciones de supervisión, uno (1) de los cuales deberá ser empleado civil de la institución.

Además de lo antes expuesto, los apelados sostienen que el Reglamento 6994 es inconstitucional por violar derechos como la no autoincriminación y el debido proceso de ley. Ello, porque a pesar de que el Reglamento 6994 dispone que se le advertirá al confinado que le asiste el derecho a guardar silencio durante el procedimiento disciplinario,[11] el Reglamento 6994 también establece que, "[e]l confinado debe ser informado que su silencio será considerado prueba suficiente para encontrarlo incurso por el acto imputado".[12] Por otro lado, en cuanto a los programas de desvío y de libertad bajo palabra, los apelados sostienen que no se cumple con la celebración de una vista inicial para determinar causa probable para la revocación del programa antes de la vista final de revocación.

La Administración de Corrección alegó que las violaciones imputadas resultan incompatibles con los propósitos del confinamiento y su fin re-socializador. Arguyó que los reclamos de los confinados no eran válidos

---

[11] Reglamento de la Administración de Corrección, núm. 6994, Regla 9(G)(2)(a), Regla 10(B)(1)(a).

[12] *Íd.*, en las R. 9(G)(2)(b), 10(B)(1)(b).

por la necesidad de un procedimiento disciplinario administrativo sumario para asegurar el orden y la seguridad dentro de las instituciones carcelarias. La Administración de Corrección sostuvo que el Reglamento 6994 era un "reglamento interno" conforme la L.P.A.U., *supra*, ello, por no ser de aplicación a la ciudadanía en general. En la alternativa, alegó que el procedimiento disciplinario cumple con la excepción estatuida en la L.P.A.U., *supra*, sobre los procedimientos adjudicativos de acción inmediata.[13] Justificó los términos de notificación, vista, reconsideración e imposición de medidas por tratarse de confinados imputados de cometer agresiones físicas, manejar sustancias controladas, dislocar la armonía institucional, presentar un riesgo de fuga, entre otras que hacen inefectivo un proceso adjudicativo formal.

La Administración de Corrección expuso que el Reglamento 6994 fue creado adoptando los resultados arrojados por varios estudios periciales sobre el comportamiento de los confinados en Puerto Rico, así como de una correlación de diferentes reglamentos disciplinarios aplicados por estados de la Unión. En adición, alegan que el Reglamento 6994 fue adoptado en virtud de lo dispuesto en *Morales Feliciano v. E.L.A.*.[14] Ello, debido a que el Tribunal de Distrito de

---

[13] 3 L.P.R.A. § 2167.

[14] *Morales Feliciano v. Acevedo Vilá,* 2007 C.D.P.R., res. el 13 de diciembre de 2007, disponible en Lexis el 27 de octubre de 2009; *Morales Feliciano v. Rosselló González,* 775 F. Supp. 2d 487 (D.C.P.R. 2000); *Morales Feliciano v. Hernández Colón*, 775 F. Supp. 487 (D.C.P.R. 1991); *Morales Feliciano v. Hernández Colón*, 697 F. Supp. 37 (D.C.P.R. 1988); *Morales Feliciano v.*

Estados Unidos para el Distrito de Puerto Rico encontró serias deficiencias en los procedimientos disciplinarios dentro de las instituciones penales de Puerto Rico. Dicho foro judicial, señaló que las ineficiencias en los procedimientos disciplinarios afectan la seguridad en las instituciones penales de Puerto Rico. El Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico ordenó que se revisara el reglamento disciplinario para disponer de forma clara y precisa las normas y los procedimientos disciplinarios. El Reglamento 6994 aquí en controversia fue adoptado siguiendo los parámetros establecidos por el Sistema de Prisiones Federales.[15]

La Administración de Corrección alegó que una de las deficiencias del reglamento disciplinario anterior era la carencia de disposiciones que establecieran de forma clara y precisa las conductas que constituían faltas disciplinarias y las sanciones correspondientes. Alegadamente, mientras el pasado reglamento disciplinario estaba en vigor, la resolución de un procedimiento disciplinario podía tardarse aproximadamente seis (6)

---

*Hernández Colón*, 697 F. Supp. 26 (D.C.P.R. 1987); *Morales Feliciano v. Hernández Colón*, 672 F. Supp. 627 (D.C.P.R. 1987); *Morales Feliciano v. Romero Barceló*, 672 F. Supp. 591 (D.C.P.R. 1986); *Morales Feliciano v. Romero Barceló,* 605 F. Supp. 967 (D.C.P.R. 1985); *Morales Feliciano v. Romero Barceló*, 497 F. Supp. 14 (D.C.P.R. 1979).

[15] "Federal Bureau of Prisons".

meses, lo que según expresa la Administración de Corrección, facilitaba el que muchas determinaciones se tornaran académicas.

La Administración de Corrección arguyó que lo anterior, en unión a otros factores como permitir la presencia de abogados en los procedimientos disciplinarios, provocaba una merma en la presentación de querellas disciplinarias. La Administración de Corrección alegó que durante el tiempo que estuvo en vigor el pasado reglamento disciplinario el control de las instituciones penales permanecía, prácticamente, en poder de los confinados. Ello, en detrimento de la rehabilitación de los confinados así como de la seguridad carcelaria y de la ciudadanía en general por el peligro latente de fuga.

El 16 de febrero de 2007, luego de varios trámites procesales, la Administración de Corrección presentó una moción ante el Tribunal de Primera Instancia solicitando la desestimación del caso. Fundamentó su solicitud en que los aquí apelados no habían agotado los remedios administrativos. El foro primario declaró NO HA LUGAR la referida moción y determinó que los hechos particulares de este caso justificaban preterir el trámite administrativo. El Tribunal de Primera Instancia entendió que el ejercicio hermenéutico sobre si el Reglamento 6994 cumple con las disposiciones de la L.P.A.U., *supra*, y con la jurisprudencia constitucional aplicable es un asunto de estricto derecho que hace innecesaria la pericia

administrativa.

El 7 de diciembre de 2007, el Tribunal de Primera Instancia determinó en su Sentencia Declaratoria que los procedimientos adjudicativos dispuestos en el Reglamento 6994 tienen que ser de naturaleza formal y cumplir con las garantías mínimas provistas por la L.P.A.U., *supra*, para todo procedimiento adjudicativo formal. El foro judicial primario, declaró nulas las disposiciones del Reglamento 6994 concernientes al proceso de notificación de querellas, descubrimiento de prueba, reconsideración de resoluciones y la composición del Comité Disciplinario.[16] Ello, por entender que el Reglamento 6994 es contrario a las disposiciones de la L.P.A.U., *supra*. Además, el Tribunal de Primera Instancia resolvió que las disposiciones reglamentarias sobre la revocación de los programas de desvío violan los parámetros constitucionales del debido proceso de ley.

En adición a la Sentencia Declaratoria, el Tribunal de Primera Instancia emitió un interdicto permanente prohibiéndole a la Administración de Corrección actuar en contra de lo dispuesto en su Sentencia, bajo apercibimiento de desacato. El foro primario le ordenó a la Administración de Corrección comenzar un proceso de enmiendas

---

[16] **Según se desprende de la Sentencia dictada por el Tribunal de Primera Instancia, las reglas anuladas son las siguientes: la R. 6, R. 7, R. 14, R. 16, R. 20, R. 23 y R. 24(C).**

reglamentarias al Reglamento 6994, conforme a lo dispuesto en su Sentencia Declaratoria.

Inconforme con dicha determinación, la Administración de Corrección acudió ante el Tribunal de Apelaciones. El 22 de mayo de 2008, el foro apelativo intermedio confirmó, por los mismos fundamentos, la Sentencia Declaratoria así como todas las órdenes emitidas por el Tribunal de Primera Instancia.

Insatisfechos con el dictamen del Tribunal de Apelaciones, la Administración de Corrección acude ante nos alegando la comisión de los errores siguientes:

> **Erró el Honorable Tribunal de Apelaciones al invalidar el Reglamento de Disciplina del Departamento de Corrección y Rehabilitación de 29 de junio de 2005, Reglamento Núm. 6994.**

> **Erró el Honorable Tribunal de Apelaciones al concluir que los procedimientos administrativos de la Administración de Corrección no cumplen con adecuadas garantías constitucionales.**

## II

Antes de comenzar la evaluación de los errores señalados nos es forzoso analizar otros hechos acontecidos durante la tramitación del caso de marras ante este Tribunal. Veamos.

A inicios de 2009, el confinado señor Marcelino Acevedo Bayón demandó a la Administración de Corrección impugnando varias disposiciones del Reglamento 6994. En

dicho caso, el Tribunal de Primera Instancia le ordenó a la Administración de Corrección no aplicar el Reglamento 6994, de lo contrario la encontraría incurso en desacato. Ello, porque el foro primario había determinado previamente la nulidad del Reglamento 6994 en el caso de *Edgardo Acevedo Bayón v. Administración de Corrección*.[17] **Tales sentencias advinieron finales y firmes.**

En cumplimiento con la orden del Tribunal de Primera Instancia la Administración de Corrección emitió la Orden Administrativa Núm. DCR-2009-05. Dicha Orden Administrativa eliminó el Reglamento Núm. 6994 y activó el reglamento disciplinario anterior.

Por lo antes expuesto, los apelados presentaron ante este Tribunal un escrito informativo donde argumentaron la academicidad del caso por el cambio de reglamentación aplicable. Ante esa situación, le concedimos un término de treinta (30) días al Procurador General para que se expresara sobre el escrito presentado por los aquí apelados. El 23 de junio de 2009, mientras el término concedido transcurría, la Administración de Corrección emitió la Orden Administrativa Núm. AC-2009-03. En esta Orden Administrativa se restableció el Reglamento 6994. Luego, el Procurador General, presentó su moción en cumplimiento de orden informando que el caso de marras no se había tornado académico. Ello, porque las actuaciones de la Administración de Corrección fueron dirigidas a

---

[17] LPE-2007-0032.

evitar ser encontrada incurso en desacato mientras este Tribunal resolvía el presente caso.

**No obstante, el 23 de septiembre de 2009, la Administración de Corrección presentó en el Departamento de Estado un nuevo reglamento disciplinario, en adelante el Reglamento Núm. 7748, el cual entró en vigor el 23 de octubre de 2009.**[18] Por lo anterior, el 13 de noviembre de 2009, los apelados presentaron ante nos una "SOLICITUD PARCIAL DE DESESTIMACIÓN POR ACADEMICIDAD". Ante esta situación, el 25 de noviembre de 2009, emitimos una Resolución donde, nuevamente, le concedimos un término de veinte (20) días al Procurador General para que expresara su posición sobre la academicidad del caso. El 21 de diciembre de 2009, el Procurador General presentó su "ESCRITO EN CUMPLIMIENTO DE RESOLUCIÓN". En dicho escrito, el Procurador General aceptó como cierta la academicidad parcial de algunas de las controversias que estaban ante la consideración de este Tribunal.

En suma, los apelados alegan que aún quedan latentes las controversias sobre el derecho de abogado en los procedimientos disciplinarios y el derecho a presentar evidencia en las vistas disciplinarias. De la otra parte, la Administración de Corrección, mediante el Procurador General, alega que además de las dos (2) controversias

---

[18] Reglamento de la Administración de Corrección núm. 7748, *Reglamento Disciplinario para la Población Correccional*, de 23 de septiembre de 2009.

anteriores queda pendiente por resolver si el reglamento disciplinario aplicable a los miembros de la población correccional es un reglamento legislativo o interno.

III

La doctrina de academicidad agota los límites de la función judicial.[19] Si una controversia ante la consideración de un tribunal se torna académica, ya sea por cambios fácticos o judiciales durante el trámite procesal del caso, la acción deja de ser justiciable. Ello, porque la sentencia no tendría efecto legal y la misma resultaría ser consultiva.[20] La doctrina de la academicidad requiere que durante todas las etapas de un procedimiento adversativo, incluyendo la etapa de apelación o revisión, exista una controversia genuina entre las partes.[21]

Sin embargo, la doctrina de academicidad tiene las excepciones siguientes: cuando se plantea una cuestión recurrente; si la situación de hechos ha sido modificada por el demandado pero sin características de permanencia; cuando subsisten consecuencias colaterales y cuando un tribunal certifica un pleito de clase y el caso se torna

---

[19] *Angueira Navarro v. J.L.B.P.*, 151 D.P.R. 605 (2000); *Misión Industrial de Puerto Rico v. Junta de Planificación*, 146 D.P.R. 64 (1998); *C.E.E. v. Dpto. de Estado*, 134 D.P.R. 927 (1993).

[20] *Angueira Navarro v. J.L.B.P.*, *supra*; *RBR Construction v. Autoridad de Carreteras*, 149 D.P.R. 836 (1999); *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988).

[21] *Íd.*

académico para un miembro de la clase mas no para el representante de la misma.[22] La academicidad puede ser levantada en cualquier momento del procedimiento judicial y una vez constatada impide resolver el caso en sus méritos.[23]

Habiendo examinado la "SOLICITUD DE DESESTIMACIÓN PARCIAL POR ACADEMICIDAD" presentada por los apelados y el "ESCRITO EN CUMPLIMIENTO DE RESOLUCIÓN" presentado por la Administración de Corrección, concluimos que las controversias respecto al Reglamento 6994 son académicas. Ello, debido a que la Administración de Corrección presentó ante el Departamento de Estado un nuevo reglamento disciplinario, éste es el Reglamento 7748.

Hemos expresado que los reglamentos de la Administración de Corrección merecen nuestra deferencia en cuanto a la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de mantener el orden en las instituciones carcelarias bajo su jurisdicción.[24] Además, en el caso ante nos no se cumple con ninguna excepción sobre academicidad. **No obstante, subsisten controversias justiciables ante nuestra consideración, estas controversias surgen de las disposiciones del**

---

[22] *Angueira Navarro v. J.L.B.P.*, *supra*; *El Vocero v. Junta de Planificación*, *supra*; *Pueblo v. Ramos Santiago*, 138 D.P.R. 810 (1995).

[23] *Véase*, *"Notes, Cases: Moot on Appeal; A limit on the Judicial Power"*, 103 U. Pa. L.Rev. 772 (1955).

[24] *Álamo v. Administración de Corrección*, *supra*; *Cruz Negrón v. Administración de Corrección*, 164 D.P.R. 341 (2005).

**Reglamento 7748 que permanecen, esencialmente, iguales a las del Reglamento 6994.** Las controversias son las siguientes: ¿El Reglamento 7748 es un reglamento interno como alega la Administración de Corrección o es un reglamento formal de tipo legislativo como arguyen los apelados? ¿El Reglamento 7748 viola el debido proceso de ley de los sumariados y/o confinados por no permitirles representación legal en el proceso disciplinario así como tampoco presentar prueba a su favor? Veamos.

IV

Las agencias tienen el deber de especificar, mediante reglamentación, los criterios esbozados de forma muy general en la legislación para evitar una aplicación arbitraria e injusta y proveer guías adecuadas para que las partes afectadas por las acciones de la agencia administrativa estén debidamente informadas del estado de derecho vigente.[25] Para definir y delimitar el poder de reglamentación delegado a una agencia administrativa hay que analizar lo siguiente: si la ley orgánica autoriza la acción administrativa; si se delegó el poder de reglamentación; si el reglamento recae sobre los poderes delegados a la agencia por la Asamblea Legislativa; si al aprobarse la reglamentación se cumplió con las normas estatutarias; y si el reglamento es arbitrario y/o

---

[25] *Asociación de Farmacias v. Depto. de Salud*, 156 D.P.R. 105 (2002).

caprichoso.[26]

La Ley Orgánica de la Administración de Corrección, *supra*, faculta a dicha agencia a "aprobar, enmendar y derogar reglamentos" para cumplir con lo estatuido en su Ley Orgánica.[27] La Asamblea Legislativa le delegó, taxativamente, a la Administración de Corrección el poder de establecer la reglamentación necesaria para sancionar a los miembros de la población correccional por mala conducta. La Sección 1163 de la Ley Orgánica de la Administración de Corrección, *supra*, dispone, en lo pertinente, lo siguiente:

> . . .
> El Administrador adoptará. . .un reglamento para la concesión, disfrute, rebaja y cancelación de los abonos. . . en el cual establecerá, entre otros, lo siguiente:
> . . .
> (b) aquellos actos perpetrados por el confinado que constituyan mala conducta, clasificándolos por la seriedad y gravedad de los actos y la sanción que éstos conllevan, las cuales incluirán amonestación, rebaja o cancelación parcial o total de abonos;
> (c) el sistema de evaluación de la conducta de los confinados que dé lugar a la concesión, disfrute, suspensión, rebaja y cancelación de los abonos;
> (d) el procedimiento que utilizará para la concesión, disfrute, suspensión, rebaja y cancelación de los abonos que garantice el debido proceso de ley. . .[28]

---

[26] *Carrero Gueits v. Depto. de Educación*, 141 D.P.R. 830 (1996).

[27] 4 L.P.R.A. §§ 1113 (l), 1163.

[28] 4 L.P.R.A. § 1163.

**En virtud de dicha autoridad la Administración de Corrección aprobó el Reglamento 7748. Tal actuación cumplió a cabalidad con los criterios establecidos por la L.P.A.U., *supra*, para la aprobación de reglamentos según demuestran las partes.**[29] Con la aprobación del Reglamento 7748 se persiguió promover la seguridad y el orden en las instituciones penales de Puerto Rico, siguiendo el claro mandato de la Asamblea Legislativa.

V

Establecido el poder de reglamentación que posee la Administración de Corrección procede discutir si el Reglamento 7748 es un reglamento interno o legislativo. Veamos.

En *Agosto Serrano v. Fondo del Seguro del Estado*,[30] expresamos que una regla legislativa es una que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley. **Es una regla que la agencia aprueba para darle contenido sustantivo o detallado, o de algún otro modo complementar la ley.**[31] Los reglamentos legislativos tienen un efecto sustantivo y obligatorio sobre los derechos de las personas a las cuales

---

[29] *Véase*, en el expediente judicial la "SOLICITUD DE DESESTIMACIÓN PARCIAL POR ACADEMICIDAD", pág. 5.

[30] 132 D.P.R. 866 (1993).

[31] *Íd*.

se les aplique la reglamentación.[32] De igual forma, los reglamentos legislativos aplican tanto a los individuos como a las agencias que los promulgan porque éstas no pueden actuar en contra del mismo, por considerarse dicha actuación como una *ultra vires*.[33]

En cuanto a los reglamentos internos, la L.P.A.U., *supra*, los define de la manera siguiente: "[r]eglas relacionadas con la administración interna de la agencia que no afectan directa y **sustancialmente** los derechos o los procedimientos o prácticas disponibles para el público en general".[34] Por ello, los reglamentos internos no tienen que cumplir con las disposiciones procesales requeridas por la L.P.A.U., *supra*. Lo anterior, siempre y cuando no afecten de forma directa y sustancial derechos, procedimientos o prácticas para la ciudadanía en general.[35] El propósito de las reglas o reglamentos internos es mantener la flexibilidad de los procedimientos ante la agencia

---

[32] Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Cap. 3 § 3.3, en la pág. 123 (2da ed. FORUM).

[33] *Comité de Vecinos Pro-Mejoramiento, Inc. v. Junta de Planificación*, 147 D.P.R. 750 (1999); *T-Jac Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70 (1999); *Montoto v. Pelayo*, 145 D.P.R. 30 (1998).

[34] 3 L.P.R.A. § 2102 (l)(1).

[35] Javier A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, en la pág. 76 (Situm 2007).

administrativa siempre que no se afecten los derechos de alguna parte.[36]

**Los reglamentos internos están dirigidos a la organización interna de las agencias administrativas**. Se persigue otorgarles libertad a las agencias administrativas para que organicen sus operaciones internas.[37] En suma, los reglamentos internos abarcan aquellas acciones de las agencias administrativas que no afecten **derechos** o **intereses** de las partes.

La mera clasificación de un reglamento como legislativo o interno no es determinante. Para determinar si una regla o reglamento es legislativo o interno se utiliza el examen del "impacto sustancial" ("substancial impact test"). Si la reglamentación modifica derechos sustantivos o crea obligaciones estamos ante un reglamento legislativo.[38]

Un examen integral a las disposiciones del Reglamento 7748 demuestra que la Administración de Corrección estableció un mecanismo disciplinario uniforme de aplicación general en todas las instituciones penales bajo su jurisdicción. En adición, el Reglamento 7748 contempla la imposición de sanciones civiles por el incumplimiento de sus disposiciones. **Concluimos que el Reglamento 7748 es un**

---

[36] B. Schwartz, *Administrative Law Treatise*, § 4.12 en la pág. 197 (3ra ed. Little Brown 1991).

[37] *American Hospital Association v. Bowen*, 834 F. 2d 1037 (D.C. Cir. 1987).

[38] *Véase*, *Pennsylvania v. U.S.*, 361 F. Supp. 208 (D.M.D. Pennsylvania 1973); *National Motor v. U.S.*, (D.D.C. 1967 affi'd 393 U.S. 18 (1968).

**reglamento formal de tipo legislativo**. Ello, no porque el Reglamento 7748 afecte los derechos de los confinados, sumariados o personas que se encuentren disfrutando de algún programa de desvío o de sentencia suspendida, **sino porque tiene un efecto sustancial en los intereses de éstos.**

La eliminación de las bonificaciones tiene como resultado que el confinado pase más tiempo en prisión. De igual forma, el Reglamento 7748 aplica a personas que se encuentran disfrutando de algún programa de desvío o de sentencia suspendida. Estas personas gozan de unos beneficios los cuales de ser suspendidos repercutirían sustancialmente en ellos. Ello, por la extensión de su condena, además, de los posibles efectos colaterales que estos individuos pueden sufrir.

VI

Establecido que el Reglamento 7748 es un reglamento formal de tipo legislativo, es nuestro deber analizar si el Reglamento 7748 cumple con el debido proceso de ley.

El debido proceso de ley aplica cuando hay una privación de un derecho propietario, libertario o de vida.[39] No obstante, en el derecho administrativo el debido proceso de ley no tiene la misma rigidez que en la esfera penal. Ello, se debe a la necesidad que tienen las agencias de regular las áreas que le han sido delegadas por la Asamblea Legislativa debido a su peritaje en el campo. Aún así, el

---

[39] 1 L.P.R.A. Art. II § 7; Const. de E.U.A. enmienda XIV.

procedimiento adjudicativo debe de ser uno justo y equitativo.[40] Para determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, hay que analizar los factores siguientes: **el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas; y el interés gubernamental protegido en la acción sumaria, inclusive los cargos fiscales y administrativos que conllevaría el imponer otras garantías procesales.**[41]

El Tribunal Supremo de Estados Unidos dictaminó que los procesos disciplinarios contra confinados no constituyen parte integral del procesamiento criminal, por ello, **no son de plena aplicación las garantías del debido proceso de ley.**[42] El debido proceso de ley requerido en los procedimientos disciplinarios institucionales tiene que ser flexible y dependerá de los intereses afectados por la acción gubernamental.[43] El máximo foro federal reconoció la necesidad legítima de las instituciones correccionales de salvaguardar la seguridad de los confinados, eludiendo

---

[40] *Unión Independiente de Empleados de la A.E.P. v. A.E.P.*, 146 D.P.R. 611 (1998).

[41] *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982); *Torres Acosta v. Junta Examinadora*, 161 D.P.R. 696 (2004).

[42] *Ponte v. Real*, 471 U.S. 491 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[43] *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

determinados requerimientos administrativos que en la práctica resultan ser onerosos y podrían ser susceptibles de manipulación, evitando así la rehabilitación del confinado.[44]

Cuando un confinado pierde las bonificaciones por buena conducta, las garantías mínimas del debido proceso de ley aplicables a las vistas disciplinarias para confinados son las siguientes: **notificación escrita; oportunidad de presentar testigos y evidencia documental en su defensa, siempre que no atente contra la seguridad de la institución penal y un informe escrito que exponga los hechos, fundamentados con evidencia y las razones que motivaron la acción disciplinaria.**[45] La imposición de mayores garantías procesales constituiría una carga indebida para procesos adjudicativos que, por sus circunstancias particulares, se efectúan en un área altamente sensitiva y requieren que se actúe con premura.[46]

## VII

¿A la luz de lo antes expuesto, las disposiciones reglamentarias en controversia cumplen con el debido proceso de ley en su vertiente sustantiva y procesal? Nos es forzoso contestar tal interrogante en la afirmativa.

---

[44] 1 L.P.R.A. Art. VI § 19; *Superintendent v. Hill*, *supra*, págs. 454-455.

[45] *Íd.*, pág. 454.

[46] *Íd.*, pág. 456.

Veamos.

En *Pueblo v. Falú Martínez*,[47] discutimos la extensión de ciertos derechos que cobijan a los confinados. En dicha ocasión, expresamos que las situaciones que afectan a las instituciones carcelarias obligan a la Administración de Corrección a establecer un régimen disciplinario riguroso. Tal régimen disciplinario debe buscar la protección del orden público así como la de los propios reclusos.[48] En suma, en *Pueblo v. Falú Martínez*, *supra*, expresamos que aunque los confinados no se encuentran del todo fuera del alcance de la Constitución "poseen aquellos derechos que no resulten incompatibles con el confinamiento".[49]

En *Wolff v. McDonnell*,[50] el Tribunal Supremo de Estados Unidos determinó que los confinados por estar en prisión no son despojados de sus derechos. Ahora bien, el máximo foro judicial determinó que los confinados sufren una disminución en sus derechos. Ello, por las exigencias institucionales existentes en el régimen penal.[51]

Por lo expuesto, el Tribunal Supremo de Estados Unidos negó reconocer un derecho de asistencia de abogado a los

---

[47] 116 D.P.R. 828 (1986).

[48] *Íd*., pág. 836.

[49] *Íd*., citando a *Hudson v. Palmer*, 468 U.S. 517, 524 (1984).

[50] 418 U.S. 539 (1974).

[51] *Íd*.

confinados que enfrenten procesos disciplinarios que puedan culminar con la cancelación de bonificaciones ganadas por buena conducta. El máximo foro judicial determinó que el permitir que los abogados representen a los confinados en las vistas disciplinarias afectaría el funcionamiento de los procedimientos disciplinarios. Ello, por maximizar el carácter adversativo de las vistas disciplinarias imposibilitando que el mecanismo de las vistas sea uno ágil y flexible. Lo anterior en detrimento de la seguridad y el orden en las prisiones.[52]

En *Álamo v. Administración de Corrección*, *supra*, nos expresamos sobre el derecho de abogado en los procedimientos disciplinarios para confinados. En síntesis, expresamos, en parte, lo siguiente:

> [N]o podemos soslayar la importancia que reviste el interés en preservar la seguridad y el orden en las instituciones carcelarias del país [sic]. Ya anteriormente hemos expresado que las prisiones son lugares de cautiverio involuntario cuya peligrosidad y la protección de los empleados, personal administrativo, visitantes y de los propios reclusos obligan a que se tomen rigurosas medidas de seguridad. *Pueblo v. Falú Hernández*, *supra* en la pág. 836. El interés en proteger a los miembros del sistema carcelario exige flexibilidad y prontitud en los procedimientos disciplinarios dirigidos a castigar la conducta prohibida de los confinados. Si bien dicha flexibilidad administrativa no puede prestarse para la abdicación de las protecciones que reconoce nuestro ordenamiento, es preciso formular un balance entre ambos intereses. Al hacerlo, debemos también considerar nuestras expresiones pasadas en el sentido de que la Administración de Corrección merece deferencia en

---

[52] *Íd.*

la adopción y puesta en vigor de sus reglamentos pues es la entidad con la encomienda de preservar el orden en las instituciones carcelarias. *Cruz Negrón v. Adm. de Corrección*, 164 D.P.R. 341 (2005).

A la luz de lo anterior, **resolvemos que los confinados que no se encuentren participando de un Programa de Desvío, Comunitario o de Pases Extendidos [sic] no tienen derecho a asistencia de abogado en procedimientos. . .disciplinarios de la Administración de Corrección. . .y que, por tanto, la disposición impugnada debe sostenerse a la luz del debido proceso de ley.**

Por lo expuesto, no le asiste la razón a los apelados. Concluimos que la falta de representación legal en las vistas disciplinarias, que no sean para la cancelación de sentencias suspendidas o programas de desvío, no viola el debido proceso de ley.

VIII

Los apelados alegan que el Reglamento 7748 viola el debido proceso de ley por negarles a los confinados un derecho de presentar prueba a su favor. No les asiste la razón.

El Reglamento 7748 establece que las vistas disciplinarias son un procedimiento de **adjudicación informal** donde el querellado tiene la oportunidad de escuchar y refutar las violaciones disciplinarias imputadas en su contra.[53] El Reglamento 7748 permite que el investigador de vistas entreviste a los testigos

---

[53] Reglamento de la Administración de Corrección núm. 7748, *Reglamento Disciplinario para la Población Correccional*, de 23 de septiembre de 2009, en la R. 4(29).

solicitados por el confinado.[54] El investigador de vistas será responsable de registrar todas las declaraciones de los testigos de forma exacta y detallada. De igual forma, se les permite a los testigos presentar su declaración por escrito.[55]

Por otro lado, el Reglamento 7748 permite que el investigador de vistas asista al confinado durante la vista disciplinaria. La asistencia que el investigador de vistas puede brindarle al confinado puede incluir el obtener declaraciones de testigos, información relacionada con el procedimiento disciplinario y la presentación de documentos del oficial querellante y otros miembros del personal.[56] El Reglamento 7748 también le permite al confinado hacer declaraciones, **presentar prueba a su favor** o guardar silencio. Es importante mencionar que se prohíbe comentar o utilizar el silencio del confinado querellado en su contra.[57]

No obstante, entendemos pertinente discutir la alegación de los apelados en relación a que el oficial examinador de vistas disciplinarias tiene la potestad de decidir qué testimonios admitir en la vista.[58] El oficial

---

[54] *Íd.*, en la R. 11 B (1).

[55] *Íd.*, en la R. 11 B (5).

[56] *Íd.*, en la R. 13 J.

[57] *Íd.*, en la R. 13 K.

[58] *Íd.*, en la R. 13 L.

examinador de vistas disciplinarias tiene la obligación de considerar toda la prueba presentada en la vista disciplinaria y su decisión tiene que basarse en los méritos de la prueba presentada y emitirá la resolución correspondiente.[59] La violación a las normas disciplinarias debe de probarse a base de la preponderancia de la prueba.[60] La resolución que emita el oficial examinador de vistas disciplinarias debe de apercibirle al confinado de su derecho a solicitar una reconsideración y el término aplicable para ejercer ese derecho.[61] Además de lo expuesto, para subsanar cualquier error administrativo, el confinado tiene el derecho de solicitar una revisión judicial de decisión administrativa.[62]

Tanto el oficial examinador como el confinado querellado pueden solicitar la presencia de testigos, siempre y cuando éstos posean información pertinente y estén disponibles.[63] De igual forma, el oficial examinador discrecionalmente puede citar testigos externos, solamente, cuando sea necesario y favorable para el confinado. El oficial examinador tiene el deber de sopesar si la presencia de dicho testigo puede constituir un riesgo para

---

[59] *Íd.*, en la R. 14 B.

[60] *Íd.*

[61] *Íd.*, en la R. 14 C (2).

[62] *Íd.*, en la R. 20.

[63] *Íd.*, en la R. 15 A.

la seguridad institucional o del propio testigo.[64] **Si el oficial examinador excluye algún testimonio tiene la obligación de documentar las razones para la exclusión.**[65]

El Reglamento 7748 dispone que un confinado querellado ostenta un derecho a presentar prueba a su favor. No obstante, la presencia de los testigos no puede poner en riesgo la seguridad institucional, la del confinado querellado o la de cualquier otra persona.[66] Si un confinado querellado solicita la presencia de un testigo y éste se niega razonablemente a declarar en persona, se le concede un término de cinco (5) días para que pueda presentar su declaración por escrito. La declaración escrita será recopilada por el investigador de vistas.[67]

La cantidad de testigos a presentarse en una vista disciplinaria depende de las circunstancias particulares de cada querella y de la pertinencia de la información que éstos posean.[68] El oficial examinador de vistas disciplinarias puede excluir declaraciones o rehusar llamar a declarar a un testigo por los fundamentos siguientes: **(1) el testimonio no es pertinente; (2) el testimonio es**

---

[64] *Íd.*

[65] *Íd.*, en la R. 15 B.

[66] *Íd.*, en la R. 15 G.

[67] *Íd.*, en la R. 15 H.

[68] *Íd.*, en la R. 15 J.

**innecesario; (3) o cuando la declaración resultaría en prueba acumulativa.**[69]

El Reglamento 7748 le provee a los confinados las garantías mínimas que establece nuestro ordenamiento jurídico. Los derechos mínimos que tienen que garantizárseles son los siguientes: **(1) notificación adecuada de los cargos, querellas o reclamos en su contra; (2) celebración de una vista informal de tipo adjudicativo; (3) la presentación de evidencia; (4) a tener un adjudicador imparcial; (5) que la decisión se base en la evidencia contenida en el expediente; (6) a reconsiderar una decisión adversa; y (7) a revisar judicialmente la misma.**[70]

Examinadas las disposiciones procesales contenidas en el Reglamento 7748 y a la luz de la jurisprudencia antes citada, determinamos que **dicha reglamentación cumple con las garantías mínimas del debido proceso de ley.** Consecuentemente, el procedimiento adjudicativo disciplinario dispuesto en el Reglamento 7748 no constituye una actuación arbitraria o caprichosa que atente contra las garantías procesales mínimas requeridas por el debido proceso de ley. La actuación de la Administración de Corrección se justifica por el interés legítimo de

---

[69] *Íd.*

[70] *Bonifacio López v. Administración de Corrección, supra; Baerga Rodríguez v. F.S.E.*, 132 D.P.R. 524 (1993).

preservar la seguridad y el orden en las instituciones penales bajo su jurisdicción. Todo ello, dirigido a lograr una rehabilitación o resocialización del confinado o persona que se encuentre en algún programa de desvío.

No podemos pretender que a la población correccional se le brinde un proceso convencional de adjudicación formal con las dilaciones y consecuencias que ello implica. La Administración de Corrección tiene la difícil tarea de manejar constantemente situaciones como agresiones físicas a otros confinados, a sí mismos y/o a los oficiales de custodia, manejo de sustancias controladas, motines, fugas o riesgo de las mismas, entre otros tipos de atentados en contra de la armonía y de la seguridad de las instituciones penales y de la ciudadanía en general por el peligro latente de fuga.

**Concluimos que los confinados tienen vasta oportunidad de presentar prueba a su favor dentro del procedimiento disciplinario el cual es un procedimiento adjudicativo informal.**

IX

Por todo lo antes expuesto, se modifica la Sentencia emitida por el Tribunal de Apelaciones y se le permite a la Administración de Corrección continuar implantando el Reglamento 7748 a tenor con lo aquí pautado. Apercibimos a la Administración de Corrección que cualquier enmienda o aprobación de un nuevo reglamento disciplinario tiene que

cumplir con el procedimiento de reglamentación formal dispuesto en la L.P.A.U., *supra*.


                         *Efraín E. Rivera Pérez*
                            *Juez Asociado*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda Báez Díaz, et al

      Recurrido

        v.                  AC-2008-48

Estado Libre Asociado de Puerto
Rico, et al

      Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 13 de julio de 2010.

      Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se modifica la Sentencia emitida por el Tribunal de Apelaciones y se le permite a la Administración de Corrección continuar implantando el Reglamento 7748 a tenor con lo aquí pautado. Apercibimos a la Administración de Corrección que cualquier enmienda o aprobación de un nuevo reglamento disciplinario tiene que cumplir con el procedimiento de reglamentación formal dispuesto en la L.P.A.U., *supra*.

      Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton concurre con el resultado sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino.

                        Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo