ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| VANESSA SANTIAGO SAN FILIPPO<br><br>Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES y CONSEJO DE TITULARES CONDOMINIO BEVERLY HILLS COURT<br><br>Recurrido | KLRA202400421 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm. C-SAN-2022-0012826<br><br>Sobre: Condominio |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2024.

I.

La Sra. Vanessa Isabel Santiago San Filippo compró un apartamento en el Condominio Beverly Hills Court J-6 en el Municipio de Guaynabo mediante escritura de compraventa otorgada el 3 de mayo de 2022. El 13 de diciembre de 2022, la señora Santiago San Filippo presentó Querella ante el Departamento de Asuntos del Consumidor (DACo) contra la Junta de Directores y/o Consejo de Titulares del Condominio Beverly Hills Court (Condominio Beverly Hills Court).[1]

Alegó, entre otras cosas, que la Administración le informó al tasador que el techo le pertenece, lo que causó un incremento en el costo de su apartamento en la cantidad de $10,000.00. Reclamó que le impusieron una multa de $100.00 por estacionarse en una zona ya que no existe área para mudanzas. Adujo, que el techo se inunda y tiene la varilla explotada; que un vecino le rayó su vehículo; que no hay sistemas de cámaras y que en el condominio hay un asunto

---

[1] Apéndice I del recurso, págs. 1-4.

Número Identificador

SEN2024_____

serio de perros y gatos. Solicitó como remedio que se le removiese la multa de $100.00 y que se aclarase el asunto legal del techo. Además, que si fue un error del Administrador que se le reembolse la cantidad de $10,000.00 y que se haga un plan de manejo de animales.[2]

El 3 de febrero de 2023 el Condominio Beverly Hills Court presentó *Contestación a querella y en solicitud de desestimación.*[3] Alegó que la Junta de Directores ha obrado conforme al Reglamento y a la Ley de Condominios. Además, que los alegados daños por información dada por el tasador o daños causados por terceros a su vehículo o por concepto de la tenencia de animales no les corresponde resarcirlos, sino al que los haya causado.[4] Posteriormente, el 11 de diciembre de 2023 el Condominio Beverly Hills Court instó *Solicitud de desestimación o de resolución sumaria.*[5]

Celebrada la vista administrativa, el 30 de mayo de 2024, archivada en autos el 4 de junio de 2024, el DACo emitió *Resolución* desestimando la Querella.[6] Rechazada de plano la *Reconsideración* instada por la señora Santiago San Filippo,[7] el 2 de agosto de 2024 esta acudió ante nos mediante *Revisión de Decisión Administrativa DACO.* Plantea:

> Erró el tribunal *[sic]* al hacer caso omiso del ruego de intervención de la recurrente. En un condominio que no se hace responsable de sus partes. El plomero que vino a manejar el asunto de la pared que explotó por acumulación de agua, indicó que había venido anteriormente a dicho condominio y el asunto no se quiso resolver. El asunto de los tubos en las paredes tapados y llenos de agua que causa humedad y daño. Que causa que el techo esté lleno de agua. Agua que [d]aña la estructura, que causa la humedad que mantiene la casa húmeda, con hongo y ha dañado todos los enseres que tienen ahora dos años. Que ha agrietado

---

[2] Posteriormente, la señora Santiago San Filippo informó que le removieron la multa y que tampoco tenía interés en cuanto a la reclamación del vehículo porque lo había vendido. Indicó, además, no tener interés en torno al Plan de Manejo de Animales.
[3] Apéndice II del recurso, págs. 5-9.
[4] *Íd.*
[5] Apéndice IV del recurso, págs. 29-40.
[6] Apéndice V del recurso, págs. 41-50.
[7] Apéndice VI del recurso, págs. 51-57.

y levantado el techo interior del apartamento J6 y el pasillo comunal. Que el cuarto de lavado la secadora está llena de agua todo el tiempo.

Erró el Foro Administrativo al no tomar el análisis del perito como información para sustentar las fotos de techo inundado, agrietado y equipos oxidados.

Erró el Foro Administrativo al no tomar la evidencia de la Reunión de Condomines en modo ilegal y luego la presentación de Escritura de Modificación de Escritura Matriz. La querella se presentó por el asunto del techo y es todo parte del asunto. La querella se presentó por la negación de la Junta de sus deberes. La Junta y sus abogados trataron de legitimizar un asunto luego que la querellante hiciera la querella y no se puede legitimizar lo ilegal. Además al saber de un asunto ilegal que afecta el Derecho Propietario y que fue inscrito en el Registro de la Propiedad, es menester del Foro tomar acción contra algo ilegal. Protegiendo los derechos y los ciudadanos que le toca proteger. La indiferencia es un acto de violencia y este Foro Administrativo presenció en la Vista como miembros de la Junta declararon del acto ilegal y no tomaron cartas en el asunto[.]

Erró el Foro Administrativo en asignar un juez diestro en la materia de Propiedad Horizontal. La recurrente se orientó en la oficina de abogados de Daco y allí su perito que tiene 30 años de experiencia en este tipo de caso Harry Smith, le indicó que el caso meritorio y que la directora de la división de Propiedad Horizontal en DACO la Lcda. Christine Auger Pinzón ha resuelto dos casos similares y se citaron en el Memorando de Derecho que el Juez Administrativo pidió. Condominio Falansterio, San Juan 12906 Isabel Torres v. Falansterio, San Juan 2016-0121 Maria Valladol v. Falansterio.

Erró el Foro Administrativo al citar Godreau interpretando que la Azotea puede usarse y por ello es responsabilidad del residente de impermeabilizarla. Uso y mantenimiento es pasarle una escoba, una manguera, recoger hojas. No pasarle una máquina de presión y productos de impermeabilización. Como muy bien me explicó el Abogado de DACO, Harry Smith, la azotea es la superficie y el techo que está debajo, está enfermo.

Erró el Foro Administrativo al no ordenar al Condominio a reembolsar los $2,808.33, incluyendo el interés legal, que la recurrente gastó impermeabilizando un techo que no era su responsabilidad por mal dirección de la Administración, beneficiando el Condominio, siendo Enriquecimiento Injusto y pagando la recurrente un gasto que no le competía.

Erró el Foro Administrativo en no entender el daño económico inminente y a su propiedad de no tomar decisiones en el asunto que se le pidió auxilio.

El 3 de septiembre de 2024 compareció el Condominio Beverly Hills Court con su *ALEGATO EN OPOSICIÓN A LA PETICIÓN DE REVISIÓN ADMINISTRATIVA*. Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

El principal propósito del DACo es defender, vindicar e implantar los derechos de los consumidores, mediante la aplicación de las leyes que asistan sus reclamos.[8] Para ello, dicha Agencia está facultada para conceder los remedios pertinentes mediante la debida adjudicación administrativa.[9] La adjudicación constituye el procedimiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que le asisten a determinada parte.[10] En materia de derecho administrativo, "el debido proceso de ley, en su vertiente procesal, se extiende al ejercicio de las facultades adjudicativas delegadas a la agencia, esto por su intervención directa con intereses de estirpe constitucional".[11] De este modo, en el ámbito administrativo, la ejecución de la referida garantía necesariamente debe propender al ejercicio de un proceso justo y uniforme para todos los involucrados.

El debido proceso de ley, cuyas garantías son aplicables en los procedimientos Administrativos, a los fines de garantizar un proceso justo y equitativo,[12] consiste del "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito Judicial como en el administrativo".[13] En el contexto de los procedimientos administrativos, el debido proceso de ley exige:

---

[8] Art. 3 de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA § 341b; *Polanco* v. *Cacique Motors*, 165 DPR 156 (2005).

[9] 3 LPRA § 341h, 341i-1.

[10] Sección 1.3 (b), Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9603.

[11] *Almonte et al.* v. *Brito*, 156 DPR 475 (2002).

[12] *Báez Díaz* v. *E.L.A.,* 179 DPR 605, 623 (2010).

[13] *Aut. Puertos* v. *HEO*, 186 DPR 417 (2012); *Marrero Caratini* v. *Rodríguez Rodríguez,* 138 DPR 215 (1995); *Báez* v. 179 DPR, pág. 623; *Almonte et al.* v. 156 DPR, pág. 482.

1) notificación adecuada del proceso; 2) proceso ante un juez imparcial; 3) oportunidad de ser oído; 4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; 5) tener asistencia de abogado, y 6) que la decisión se base en el récord.[14]

La *Ley de Condominios de Puerto Rico*, Ley Núm. 129 de 16 de agosto de 2020, según enmendada, (Ley de Condominios)[15] concede facultad al DACo para adjudicar querellas relacionadas con acciones de impugnación presentadas por titulares de un condominio. En virtud del Art. 65 del referido estatuto,[16] los titulares pueden impugnar ante el DACo acuerdos, omisiones, o actuaciones de la Junta de Directores, del administrador interino, del presidente y del secretario, concernientes a la administración del inmueble, cuando estos le sean perjudiciales al titular o a la comunidad, o que sean contrarios a la ley, escritura de constitución o reglamento del condominio.

El Reglamento de Procedimientos Adjudicativos del DACo, Reglamento Núm. 8034 de 14 de junio de 2011 (Reglamento Núm. 8034), tiene esquema uniforme de reglas para la dilucidación de las controversias sometidas a la consideración de la Agencia. Estructuralmente, DACo cuenta "con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho".[17]

III.

Entre sus planteamientos, la señora Santiago San Filippo sostiene que el Foro Administrativo se equivocó al ignorar el análisis de su perito para sustentar las fotos del techo inundado, agrietado y los equipos oxidados. No le asiste la razón.

---

[14] *Rodríguez Rodríguez* v. *E.L.A.*, 130 DPR 562, 575 (1992); *Davidson* v. *Cannon*, 474 US 344, 348 (1986).
[15] 31 LPRA § 1921 *et seq.*
[16] 31 LPRA § 1923j.
[17] *Ortiz Rolón* v. *Armando Soler Auto Sales, Inc.*, 202 DPR 689 (2019); *Amieiro González* v. *Pinnacle Real Estate*, 173 DPR 363, 372 (2008).

La Sección 3.8 inciso (a) de la Ley de Procedimiento Administrativo Uniforme,[18] rectora de los mecanismos de descubrimiento de prueba, dispone:

> Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo. No obstante lo anteriormente dispuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia.[19]

En cuanto a la vista en su fondo propiamente, el inciso (c) de la Sección 3.13 de la Ley de Procedimiento Administrativo Uniforme,[20] establece, que "el funcionario que presida la vista podrá excluir aquella evidencia que sea impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico".[21]

El Art. 20 del Reglamento de Procedimiento Adjudicativo, Reglamento 6639 de 16 de junio de 2003, establece:

ARTICULO 20: EVIDENCIA EN EL RECORD

El expediente del caso no contendrá evidencia alguna hasta tanto la misma no haya sido sometida formalmente por alguna de las partes, y no se considerará admitida hasta tanto no lo determine el Oficial Examinador en la conferencia con antelación a la vista o en la vista en su fondo del caso. Todo informe o documento producido por la agencia o por un funcionario del Estado Libre Asociado de Puerto Rico (ELA) deberá ser debidamente identificado y será admisible en evidencia si dicha persona está presente contrainterrogado sobre el documento de que se trate, a menos que las partes estipulen el contenido del informe.

En este caso, a pesar de que la vista en su fondo se prolongó por varias fechas, la señora Santiago San Filippo no solicitó al Juez

---

[18] 3 LPRA § 9648.
[19] *Íd.*
[20] 3 LPRA § 9653.
[21] *Íd.*

Administrativo que se exigiera informe de perito ni ella anunció informe pericial como parte de su prueba. En cambio, el 17 de noviembre de 2023, remitió por correo electrónico un documento titulado Certificación Registral, el cual indicó fue suscrito por el Ing. Enrique Santiago Rodríguez. Con el Informe, no incluyó solicitud alguna ni información sobre el ingeniero que lo preparó. Tampoco solicitó al DACo autorización para presentar dicho Informe en la etapa de la vista en la cual se encontraban los procedimientos. Ni siquiera anunció al Ing. Santiago como testigo, ni ofreció el informe en la vista. Ello así, no erró el Foro recurrido al rechazar considerar el aludido informe pericial.

No obstante, la señora Santiago San Filippo tuvo oportunidad de declarar en la vista en su fondo que la varilla explotada es en efecto una apertura en el plafón del balcón de su apartamento y dos en el área de las escaleras comunales. Señaló que, aunque el agua no se filtra en el techo de su apartamento, causa humedad al acumularse. Escuchado su testimonio, el Foro administrativo resolvió, a la luz de toda la prueba presentada, que su reclamo era improcedente. No erró al así hacerlo.

IV.

Plantea también la señora Santiago San Filippo que el Foro administrativo erró al ignorar evidencia de la ilegalidad de la reunión de condóminos y de la presentación de *Escritura de Modificación de Escritura Matriz* en una fecha posterior a que ella se querellara ante DACo. Añade que el Juez Administrativo asignado al caso no era diestro, y que erró al interpretar que la azotea puede usarse, y por ello es responsabilidad del residente de impermeabilizarla. Tampoco tiene razón.

Primero, argumentar que otros funcionarios del DACo hubieran tomado determinación distinta a la que llegó el Juez Administrador que presidió la vista y que tuvo ante sí la prueba

documental y testifical, es totalmente inmeritorio. Es al juez que preside los procedimientos al que compete dirimir la prueba tanto documental como testifical y conforme a la misma emitir lo que en derecho proceda. Segundo, las fuentes jurídicas utilizadas para fundamentar los dictámenes son tangenciales, pues en el foro apelativo revisamos los dictámenes y no sus fundamentos.[22]

V.

Otro de los señalamientos que hace la señora Santiago San Filippo es que el Foro Administrativo debió ordenar al Condominio reembolsarle los $2,808.33, incluyendo el interés legal, que gastó impermeabilizando un techo que no era su responsabilidad por mal dirección de la Administración. Arguye que, en la medida el Condominio se benefició de un pago hecho por ella que no le competía, constituye un enriquecimiento injusto. No tiene razón. Veamos por qué.

Según el inciso 7.1 (e) de la Regla 7 del Reglamento de Procedimiento Adjudicativo, la querella debe contener el "remedio solicitado y la valorización del mismo, en adición a cualquier suma de dinero que reclame". Al respecto, en su Querella, la señora Santiago San Filippo no solicitó la cantidad de $2,808.33 que alega en su señalamiento de error ni lo reclamó durante las vistas celebradas. De la determinación de hechos séptima se desprende que "había sellado el área que comprende el techo de su apartamento y que posterior al sellado había instalado una cisterna para su beneficio" sin exigir que se le pagara cuantía alguna cuya denegatoria suscitara un error susceptible de revisión.

La señora Santiago San Filippo sí solicitó en su *Querella* como remedio monetario, que se le removiera la multa de $100.00 por no

---

[22] *Díaz Martínez* v. *Policía de P.R.,* 134 DPR 144 (1993); *Álvarez Figueredo* v. *González Lameda,* 134 DPR 374 (1993); *Casiano* v. *Borintex Mfg. Corp.*, 133 DPR 127 (1993).

haber estacionamientos destinados a las mudanzas o remover escombros y que se le acreditara como parte de su mantenimiento. Respecto a esta cuantía, la Junta de Directores determinó eliminarla. Así lo confirmó la señora Santiago San Filippo durante la vista.[23]

VI.

Resta atender el planteamiento sobre el uso de la azotea y el *garden* como elemento común limitado por ciertos titulares. En la vista de seguimiento, la señora Santiago San Filippo impugnó la determinación tomada por el Consejo de Titulares en asamblea celebrada el 27 de marzo de 2001, de permitir el uso a los titulares de las terrazas de los apartamentos *penthouse* y el área verde a los apartamentos *gardens* a cambio del mantenimiento y limpieza de dichas áreas.

En lo pertinente a esta controversia, el Tribunal Supremo de Puerto Rico ha indicado que, por la naturaleza de este elemento, la azotea puede ser de uso exclusivo para uno o más titulares.[24] Con ello, permite que el Consejo de Titulares pueda establecer el uso de los titulares de patios y azoteas si así lo aprueba unánimemente el Consejo de Titulares.

En este caso, el Condominio Beverly Hills Court ofreció el testimonio del Sr. René Vargas y la Sra. María del Rocío Ortiz. Estos certificaron que el 9 de noviembre de 2023, el Consejo de Titulares aprobó unánimemente que los titulares de los *penthouse* usaran las

---

[23] La Sra. Santiago San Filippo alegó en la Querella que la Administración le informó al tasador de la propiedad que el techo le pertenecía, lo que causó el incremento en el costo de su apartamento en la cantidad de $10,000. No obstante, conforme la Resolución del DACo en la determinación de hecho número seis (6): "[d]urante su testimonio la querellante expresó que adquirió su apartamento en la cantidad de $160,000 mediante la Escritura de Compraventa Núm. 48 de 3 de mayo de 2022, cantidad menor por la cual suscribió la opción de compraventa. **En cuanto a las expresiones del Administrador, la querellante indicó que no le incluyó en la querella y que las expresiones sobre la titularidad del techo no fueron vertidas por la [J]unta de [D]irectores**". Por consiguiente, cualquier reclamo sobre el alegado pago en exceso de $10,000 de la propiedad debe ir dirigido en contra del Agente Administrador quien no es parte del presente pleito.
[24] *Trigo Margarida* v. *Jta. Directores*, 187 DPR 384, 406 (2012); *Consejo de Titulares* v. *Ramos Vázquez*, 186 DPR 311, 336 (2012).

terrazas como un elemento común limitado a cambio de su mantenimiento y que los titulares de apartamentos *gardens* usaran el terreno detrás de su balcón como un área de uso común limitado a cambio de su mantenimiento. A pesar de que la señora Santiago San Filippo se opuso a ello en la asamblea, no presentó moción de impugnación de los acuerdos tomados dentro de los siguientes treinta (30) días de celebrada la asamblea. Los acuerdos aprobados por el Consejo de Titulares fueron elevados mediante escritura pública al Registro de la Propiedad.

El Juez Administrativo aquilató la prueba testifical y documental ante sí y determinó que el Consejo de Titulares de forma unánime aprobó el uso del patio a los titulares de los *gardens* y el uso de las terrazas a los propietarios de los apartamentos *penthouse.* Concluyó que "el Consejo de Titulares determinó que la parte de la azotea que corresponde al área de techo es un elemento común destinado su uso a uno privativo por parte de los titulares de *penthouse.* Dicho uso, está supeditado a que solo trate de su mantenimiento y no de la reparación de la losa de cemento que constituye el techo, el cual corresponde su reparación al Consejo de Titulares". Su determinación está acorde con el inciso (b) del Art. 17 de la Ley de Condominios dispositiva de que, el "terreno, los sótanos, azoteas, patios y jardines" son elementos comunes generales, "salvo disposición o estipulación en contrario".[25]

En fin, aplicada la norma de deferencia a las determinaciones de las agencias administrativas,[26] es forzoso concluir que los errores alegados no fueron cometidos. No intervendremos ni alteraremos el dictamen recurrido, por estar sostenido por la evidencia sustancial existente en el expediente administrativo.[27]

---

[25] 31 LPRA § 1921p.
[26] *The Sembler Co.* v. *Mun. de Carolina,* 185 DPR 800 (2012); *Asoc. Fcias.* v. *Caribe Specialty et al. II,* 179 DPR 923 (2010).
[27] *Otero* v. *Toyota,* 163 DPR 716 (2005); *Pacheco* v. *Estancias,* 160 DPR 409 (2003).

## VII.

Por los fundamentos expuestos, *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
