ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CUSTOM GROUP, LLC., antes CUSTOM HOME, INC.<br><br>Recurrente<br><br>v.<br><br>COMPAÑÍA DE FOMENTO INDUSTRIAL DEL GOBIERNO DE PUERTO RICO<br><br>Recurrido<br><br>DCM, LLC.<br><br>Licitador Agraciado<br><br><br>ÁLVAREZ & MARSHALL; ECOVAL, LLC.; M2A GROUP<br><br>Licitadores no Agraciados | KLRA202500098 | REVISIÓN procedente de la Compañía de Fomento Industrial del Gobierno de Puerto Rico<br><br><br>RFP NÚM: PRIDCO-FEMA-RFP-2023-03<br><br><br>Sobre: Impugnación de Adjudicación de RFP sobre Grant Management Coordinator Services |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de mayo de 2025.

Comparece Custom Group, LLC (Custom Group o recurrente) y solicita la revisión de la adjudicación del Requerimiento de Propuesta Núm. PRIDCO-FEMA-RFP-2023-03 (RFP), notificada el 18 de octubre de 2024, por la Compañía de Fomento Industrial del Gobierno de Puerto Rico (PRIDCO o agencia recurrida).

Adelantamos que, por los fundamentos que serán expuestos, revocamos el dictamen administrativo impugnado ante la notificación inoficiosa, sin prejuzgar los méritos de la adjudicación del RFP en controversia.

**I.**

Para una mejor comprensión del recurso ante nos, a continuación, resaltamos el tracto procesal.

Surge del expediente que, mediante una *Sentencia* emitida el 12 de noviembre de 2024 (Recurso Núm. KLRA202400510), esta Curia ordenó la desestimación de una primera *Revisión Administrativa* instada por Custom Group, en la cual, cuestionó la adjudicación de la buena pro a favor de DCMC, LLC (*Recommendation for Selection of Proposal Grant Management Coordinator Services Project: FEMA 4339 DR, FEMA 4473 DR, FEMA 4671 DR, their HMP´s, CDBG-DR, and CDBG-MIT for PRIDCO Federal Funds Program, Islandwide, Puerto Rico,* RFP Núm. PRIDCO-FEMA-RFP-2023-03). Dicha adjudicación fue notificada el 7 de agosto de 2024. Sin embargo, en aquella ocasión, y como parte de su comparecencia en el mencionado recurso, PRIDCO tomó conocimiento de una omisión en la notificación del 7 de agosto de 2024 y procedió a emitir una segunda *Notificación de Adjudicación del RFP,* el 17 de octubre de 2024 la cual fue notificada el 18 de octubre de 2024. Por esta razón, PRIDCO solicitó la desestimación del Recurso Núm. KLRA202400510.

En reacción, Custom Group también se opuso a la nueva notificación realizada por la agencia recurrida el 18 de octubre de 2024. Lo antes, por entender que persistían errores sustanciales en la notificación. En consideración a lo expuesto por la propia agencia recurrida y el cuadro fáctico procesal planteado, esta Curia se declaró sin jurisdicción para atender la causa correspondiente a la adjudicación del referido RFP, notificada el 7 de agosto de 2024. Nuestra determinación en el Recurso Núm. KLRA202400510 advino final y firme, el 28 de enero de 2025.

Ahora bien, transcurridos varios meses, y atinente al recurso de epígrafe, Custom Group presentó una *Revisión Judicial* en la cual cuestiona la segunda *Notificación de Adjudicación del RFP,* emitida el 17 de octubre de 2024 y notificada el 18 de octubre de 2024, y allí señaló lo siguiente:

> Erró PRIDCO al emitir una Notificación de Adjudicación de *Request for Proposal* en craso incumplimiento con los requisitos mínimos de adecuacidad ocasionando que el

t[é]rmino para impugnar la determinación no haya comenzado a decursar.

Erró PRIDCO al emitir una Notificación de Adjudicación de *Request for Proposal* sin jurisdicción, previo al mandato del Tribunal de Apelaciones de PR, ocasionando que el t[é]rmino para impugnar la determinación no haya comenzado a decursar.

Sostiene que, dicha notificación resulta inoficiosa porque presuntamente no cumple con los requisitos de adecuacidad que impone nuestro ordenamiento jurídico. Arguye que, PRIDCO violentó el mandato de esta Curia, expuesto en el Recurso Núm. KLRA202400510, al no corregir los defectos en los términos de revisión, entre otros incumplimientos.

Mediante una *Resolución* emitida el 19 de febrero de 2025, ordenamos a la parte recurrida exponer posición. En cumplimiento, PRIDCO compareció, el 4 de marzo de 2025, mediante una *Oposición al Recurso de Revisión Judicial.* En esencia, arguye que, el recurso instado por Custom Group resulta tardío. Ello, debido a que, transcurrieron los treinta (30) días para acudir ante este foro apelativo, conforme a la Sección 4.2 de la Ley Núm. 38-2017, según enmendada, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9672.

En atención a lo anterior y en reconocimiento a las múltiples enmiendas a la LPAU, 3 LPRA sec. 9601 *et seq.,* y a la jurisprudencia aplicable, el 26 de marzo de 2025, celebramos una vista oral con el propósito de dilucidar asuntos atinentes a nuestra jurisdicción en la presente causa. Con el beneficio de sus posturas, así como, de sus respectivos alegatos suplementarios, resolvemos.

## II.

### A. La jurisdicción

Es norma reiterada que, la jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Municipio de Aguada v. W. Construction, LLC y otro,* 2024 TSPR 69, resuelto el 21 de junio de 2024. Es por ello, que, la falta de jurisdicción incide directamente sobre el poder mismo para

adjudicar una controversia. *R&B Power, Inc. v. Junta de Subastas ASG,* 213 DPR 685 (2024). De ese modo, la ausencia de jurisdicción trae varias consecuencias, tales como el que no sea susceptible de ser subsanada; las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; conlleva la nulidad de los dictámenes emitidos; impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso, y puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374 (2020).

En ese sentido, en reiteradas ocasiones el Tribunal Supremo ha expresado que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, sin poseer discreción para asumirla donde no la hay. *FCPR v. ELA et al.,* 211 DPR 521 (2023). A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia. *Íd.* A causa de ello, cuando un tribunal determina que no tiene jurisdicción para intervenir en un asunto, procede la inmediata desestimación del recurso apelativo, conforme a lo ordenado por las leyes y reglamentos para el perfeccionamiento de estos recursos. *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022); *Allied Mgmt. Group v. Oriental Bank,* supra*.*

### B. La notificación de la adjudicación del RFP

En Puerto Rico, en aras de fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado, al efectuar una contratación gubernamental de todo tipo de servicio es necesario utilizar los procedimientos de subasta o requerimiento de propuestas. *Municipio de Aguada v. W. Construction, LLC y otro, supra.* Lo antes, en atención al alto grado de interés público envuelto y como mecanismo para adquirir bienes o servicios (sean profesionales o no profesionales), en protección de los intereses y del dinero del pueblo. *Íd.*

El Tribunal Supremo ha establecido que, el proceso de RFP se utiliza cuando la adquisición envuelve bienes o servicios especializados, que involucran asuntos altamente técnicos y complejos, o ante un escaso número de competidores cualificados. *St. James Sec. v. AEE,* 213 DPR 366, 377 (2023). El Alto Foro describió el RFP como un procedimiento informal y flexible, en la medida en que, permite la negociación entre el oferente y el Gobierno, y la enmienda o revisión de las ofertas, previo a la adjudicación del contrato. *Municipio de Aguada v. W. Construction, LLC y otro,* supra. En comparación con la subasta tradicional, este método confiere mayor discreción a la entidad pública a la hora de considerar una propuesta. *Íd.* Ahora bien, todo requerimiento de propuestas habrá de incluir los requisitos, términos y condiciones y demás factores que la agencia considerará al evaluar las propuestas. *Íd.* Además, deberá describir cómo llevará a cabo el proceso, así como, el itinerario para recibir, evaluar y adjudicar la buena pro. *Íd.*

Como se sabe, un RFP no está exento de revisión judicial. *Municipio de Aguada v. W. Construction, LLC y otro,* supra. Mediante la LPAU, *supra,* la legislatura delegó a cada agencia gubernamental la facultad de aprobar su propio reglamento para establecer el procedimiento y las guías a seguir en estos procesos. *Íd.*; *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 533 (2019).

Cabe señalar que, el derecho a cuestionar una adjudicación de una subasta o RFP, mediante el proceso de revisión judicial, forma parte del debido proceso de ley. *St. James Sec. v. AEE,* supra. De manera que, en aras de ejercer tal derecho, resulta indispensable que las notificaciones que se emitan durante estos procesos se realicen correctamente, a todas las partes. *Íd.* A la luz de lo anterior, una notificación defectuosa de un dictamen administrativo priva de jurisdicción al foro revisor, impide el comienzo del término para acudir en revisión judicial y violenta el debido proceso de ley de la parte afectada. *Íd.*

En particular, el Tribunal Supremo dictaminó -en cuanto a su aspecto sustantivo- que la notificación de adjudicación deberá contener lo siguiente:

a) nombre de los licitadores;
b) síntesis de las propuestas sometidas;
c) factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos;
d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el (T)ribunal de Apelaciones, y el término para ello, que es dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación;
e) fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones. (Énfasis suprimido.) *PR Eco Park et al. v. Mun. de Yauco,* supra, págs. 536-537.

De otra parte, la notificación de adjudicación debe advertir a las partes sobre su derecho a procurar la revisión judicial, el término ante el foro correspondiente para ejercitarlo y la fecha a partir de la cual comienza el referido plazo. *St. James Sec. v. AEE,* supra, pág. 379. En la citada opinión, el Alto Foro consignó que la LPAU incluye distintas secciones que versan sobre la materia, como lo son la Sección 3.19, 3 LPRA sec. 9659, y la Sección 4.2, *supra.* En particular, resaltó la relación entre la LPAU y la Ley de la Administración de Servicios Generales y Centralización de las Compras del Gobierno de Puerto Rico de 2019, Ley Núm. 73 de 19 de julio de 2019 (Ley Núm. 73-2019 o Ley de Compras de la ASG).

En *St. James Sec. v. AEE,* supra, el Tribunal Supremo resolvió que **la ASG es una entidad gubernamental creada con el propósito de "implementar la política pública relativa a la adquisición de bienes y <u>servicios no profesionales</u> del Gobierno de Puerto Rico."**[1] Abundó sobre los términos aplicables a las adjudicaciones de subastas realizadas por la Junta de la Administración de Servicios Generales y la Junta Revisora de la Administración de Servicios Generales.

---

[1] Énfasis nuestro.

Valga aclarar que, al resolver *St. James Sec. v. AEE,* supra, la Sección 3.19 de la LPAU vigente era la enmendada por la Ley Núm. 150 de 18 de noviembre de 2020. La referida sección, hoy derogada, permitía al licitador perdidoso instar un petitorio de reconsideración ante la agencia o, en la alternativa, presentar una solicitud de revisión ante la Junta Revisora de la Administración de Servicios Generales (Junta Revisora de la ASG) o ante la entidad apelativa dispuesta por ley o reglamento, en un término de veinte (20) días, previo a acudir en revisión judicial ante esta Curia. Lo antes resulta inaplicable a la causa ante nos.

Con la aprobación de la Ley Núm. 48 de 19 de febrero de 2024 (Ley Núm. 48-2024), quedó derogada la referida Sección 3.19 de la LPAU (aplicada en *St. James Sec. v. AEE,* supra) y fue sustituida por una nueva; ésta, a su vez, también fue enmendada por la Ley Núm.153 de 12 de agosto de 2024. Además, la Ley Núm. 48-2024, *supra,* enmendó la Sección 4.2 de la LPAU, *supra.* Cabe recordar que la nueva legislación no fue aplicada en el caso de *St. James Sec. v. AEE,* supra.[2]

En atención a los distintos argumentos de las partes debemos señalar que, surge de la Exposición de Motivos de la Ley Núm. 48-2024 que: "mediante esta medida legislativa se elimina el recurso de 'reconsideración', se establece la 'revisión administrativa' como el único mecanismo para atender las impugnaciones de las subastas y se dispone que la Junta Revisora [de la ASG] será el único organismo para entender sobre los recursos de revisión administrativa."

Lo antes se presta a confusión porque sólo resulta aplicable a las adjudicaciones de subasta que realiza la Junta de la ASG. Es decir, el estatuto establece claramente que, la Junta de la ASG adjudica la licitación, pero no atiende reconsideraciones. Una parte insatisfecha por una adjudicación de la Junta de la ASG tiene

---

[2] Véase, *St. James Sec. v. AEE,* supra, a la pág. 381, nota al calce número 4, así como, la nota al calce número 6, a la pág. 389.

derecho a cuestionar la adjudicación de una subasta o RFP de servicios no profesionales ante la <u>Junta Revisora de la ASG,</u> mediante una "revisión administrativa", en sustitución de lo que antes se conocía como una reconsideración. No obstante, debemos recordar que, tanto la Junta de la ASG como la Junta Revisora de la ASG, solo atienden procesos de licitación pública de bienes y servicios no profesionales. Como se sabe, el caso de epígrafe versa sobre un RFP de servicios profesionales.

Es de notar que, con la aprobación de la Ley Núm. 48-2024, *supra*, el legislador guardó silencio en cuanto a la posibilidad de solicitar una reconsideración de la adjudicación de un RFP sobre servicios profesionales, adjudicada por la propia agencia administrativa. La Ley Núm. 48-2024, *supra,* sí dispone sobre los procesos ante la Junta de la ASG, conforme a la Ley Núm. 73-2019, *supra.* También regula el agotamiento de remedios ante la Junta Revisora de la ASG para licitaciones de bienes y servicios no profesionales, antes de recurrir ante el Tribunal de Apelaciones en revisión judicial.[3] Lo antes, en armonía con la resuelto por el Alto Foro en *St. James Sec. v. AEE,* supra, a los efectos de que, la Ley Núm. 73-2019, *supra,* es para regular la adquisición de bienes y <u>servicios no profesionales</u>. En su Exposición de Motivos dispone lo siguiente:

> [e]sta Ley además reconoce el recurso de revisión administrativa como el único recurso para impugnar las adjudicaciones en los procesos de licitación pública <u>regulados por la Ley 73, *supra,*</u> y dispone que su presentación es un requisito jurisdiccional antes de presentar un recurso de revisión judicial. Lo anterior elimina las confusas opciones que la legislación le otorgaba a las partes y que provocaba que las partes presentaran tanto el recurso de reconsideración, como el de revisión administrativa en foros distintos. Al instituir el recurso de revisión administrativa ante la Junta Revisora [de la ASG] como el único mecanismo de

---

[3] Cabe señalar que en *St. James Sec. v. AEE* supra a la pág. 389, el Tribunal Supremo destacó mediante una nota al calce número 6 que, lo citado y referente al término de 20 días para acudir ante el Tribunal de Apelaciones era "según establecía en ese momento en la Sección 3.19 de la LPAU, *supra,* y en la Sección 4.2 del referido estatuto, *supra.*" Por tanto, el término de 20 días para recurrir ante esta Curia, incluida en dicha opinión, solo aplicaba al momento de la adjudicación en ese caso particular y no a las adjudicaciones de subastas o RFP posteriores, cónsono a las enmiendas adoptadas con posterioridad.

impugnación de las adjudicaciones se d[a] uniformidad y certeza [a]l proceso.

De otra parte, la Ley 48-2024, *supra* también enmendó, la Sección 4.2 de la LPAU, *supra,* la cual lee como sigue:

Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

En los casos de impugnación de procesos de licitación pública, la parte adversamente afectada por una orden o resolución final de la Junta Revisora de Subastas de la Administración de Servicios Generales podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones dentro de un término de veinte (20) días calendario contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la Junta Revisora de Subastas de la Administración de Servicios Generales o dentro del término de veinte (20) días calendario de haber transcurrido el plazo dispuesto por la Sección 3.19 de esta Ley. La mera presentación de una solicitud de revisión al amparo de esta Sección no tendrá el efecto de paralizar la adjudicación del proceso de licitación pública impugnado.

Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

La revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa, sea esta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de esta Ley.

Subsiguientemente, el 12 de agosto de 2024, se aprobó la Ley Núm. 153 a los fines de enmendar la Sección 3.19 de la LPAU, *supra,* y corregir ciertas incongruencias. En particular, mediante dicha enmienda se establece que, el término para impugnar una determinación de la Junta Revisora de la ASG, mediante revisión judicial ante el Tribunal de Apelaciones, es de veinte (20) días

calendario, tal como lo dispone la Sección 4.2 de dicha ley; sustituir el término "reconsideración" por "revisión administrativa" para uniformarlo con el resto de la ley; y sustituir "días laborables" por "días calendario". Se establecen los términos correspondientes a licitaciones de bienes y servicios no profesionales. De lo antes se desprende que, el término de 20 días allí dispuesto corresponde al proceso dentro de la ASG y no ante las agencias gubernamentales que adjudiquen licitaciones de servicios profesionales.

Ahora bien, la Ley Núm. 153-2024 también incluye una referencia a las agencias exentas de la Ley Núm. 73-2019 y las insta a "adoptar" métodos y seguir procesos conforme a la LPAU y a la Ley Núm. 73-2019. En virtud de lo anterior, la vigente Sección 3.19 de la LPAU, *supra,* lee como sigue:

> [l]os procesos de licitación pública se celebrarán de conformidad a la Ley 73-2019, según enmendada, salvo los procesos de licitación pública municipal que se realizarán de conformidad a la Ley 107-2020, según enmendada. **Las agencias administrativas bajo la definición de Entidades Exentas para fines de la Ley 73-2019, vendrán obligadas a adoptar los métodos de licitación y compras excepcionales y a seguir los procedimientos establecidos en la Ley 73-2019, al momento de realizar sus compras y subastas de bienes, obras y servicios no profesionales. Las Entidades Exentas de la Ley 73-2019, deberán además cumplir con los términos y procesos que se establecen en esta Ley y en la Ley 73-2019.**
>
> La parte adversamente afectada por una determinación en un proceso de licitación pública podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales dentro del término de diez (10) días calendario, contados a partir del depósito en el correo federal o la notificación por correo electrónico, lo que ocurra primero, de la adjudicación del proceso de licitación pública. La Junta Revisora de Subastas de la Administración de Servicios Generales deberá determinar si acoge o no la solicitud de revisión administrativa, dentro del término de diez (10) días calendario de haberse presentado la solicitud de revisión administrativa. Si dentro de ese término, la Junta Revisora de la Administración de Servicios Generales determina acoger la misma, tendrá un término de treinta (30) días calendario adicionales para adjudicarla, contados a partir del vencimiento de los diez (10) días calendario que tenía para determinar si la acogía o no. La Junta Revisora de la Administración de Servicios Generales podrá extender el término de treinta (30) días calendario, una sola vez, por un término adicional de quince (15) días calendario.
>
> Si se tomare alguna determinación en la revisión administrativa, el término para instar el recurso de revisión judicial ante el Tribunal de Apelaciones comenzará a contarse desde la fecha en que se depositó en el correo federal o se notificó por correo electrónico, lo que ocurra primero, copia de la notificación de la decisión de la Junta

Revisora de Subastas de la Administración de Servicios Generales adjudicando la solicitud de revisión administrativa. Si la Junta Revisora de Subastas de la Administración de Servicios Generales dejare de tomar alguna acción con relación al recurso de revisión administrativa, dentro de los términos dispuestos en esta Ley, se entenderá que este ha sido rechazado de plano, y a partir de esa fecha comenzará a decursar el término para presentar el recurso de revisión judicial. La presentación del recurso de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales será un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones.

La parte adversamente afectada tendrá un término jurisdiccional de veinte (20) días calendario para presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, contados a partir del depósito en el correo federal o de remitida la determinación por correo electrónico, lo que ocurra primero, ya sea de la adjudicación de la solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales, o cuando venza el término que tenía la Junta Revisora de Subastas de la Administración de Servicios Generales para determinar si acogía o no la solicitud de revisión administrativa.

La notificación de la adjudicación del proceso de licitación pública deberá incluir las garantías procesales establecidas en la Ley 73-2019 relativas a los fundamentos para la adjudicación y el derecho y los términos para solicitar revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales y revisión judicial.

Las agencias administrativas, entidades apelativas, la Junta de Subastas de la Administración de Servicios Generales y la Junta Revisora de Subastas de la Administración de Servicios Generales tendrán que emitir sus notificaciones de manera simultánea y utilizando el mismo método de notificación para todas las partes. En aquellos casos en que se haya utilizado más de un método de notificación para todas las partes, el término para presentar el recurso de revisión administrativa o de revisión judicial comenzará a decursar a partir de la notificación o del depósito en el correo del primer método de notificación. (Énfasis nuestro.)

Ciertamente, lo antes **no** implica que, la Junta de la ASG y la Junta Revisora de la ASG están disponibles para adjudicar licitaciones de servicios profesionales; mucho menos, para atender revisiones administrativas sobre licitaciones de servicios profesionales de las agencias gubernamentales -exentas o no- de la Ley Núm. 73-2019.[4] Todo lo contrario. Tomando en consideración lo

---

[4] El Artículo 4(p) de la Ley de Compras de la ASG define "Entidad Exenta" como: Entidad Gubernamental que no viene obligada a realizar sus compras a través de la Administración, ya sea por razón de operar bajo lo dispuesto en un plan fiscal vigente o por tratarse de entidades fiscalizadoras de la integridad del servicio público y la eficiencia gubernamental. Para propósitos de esta Ley, se considerarán entidades exentas las siguientes: Oficina de Ética Gubernamental, Oficina del Inspector General de Puerto Rico, Comisión Estatal de Elecciones, Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, Banco Gubernamental de Fomento para Puerto Rico, Autoridad para las Alianzas Público Privadas de Puerto Rico, Autoridad para el Financiamiento de la Infraestructura

resuelto en *St. James Sec. v. AEE*, supra, en donde claramente se establece que la Ley Núm. 73-2019 no aplica a licitaciones de servicios profesionales, colegimos que, la propia Sección 3.19 antes citada insta a las agencias exentas a adoptar medidas que resulten en armonía con las leyes y con la política pública establecida.

A esos efectos, cabe señalar que, conforme al Boletín Administrativo Núm. OE-2021-029, intitulado *Orden Ejecutiva del Gobernador de Puerto Rico, Hon. Pedro R. Pierluisi*, y a la Carta Circular Núm. 013-2021 de la Oficina de Gerencia y Presupuesto, las entidades que componen la Rama Ejecutiva del Gobierno de Puerto Rico, que interesen otorgar <u>contratos de servicios profesionales</u> por la cantidad de doscientos cincuenta mil dólares ($250,000.00) o más, durante un año fiscal, están obligadas a establecer unas guías uniformes regulando el proceso para evaluar y autorizar solicitudes, a modo de asegurar la transparencia, eficiencia, sensibilidad y responsabilidad fiscal en la contratación gubernamental de servicios profesionales.

Lo anterior responde a la falta de legislación específica sobre licitaciones de servicios profesionales ya que, resulta evidente que, la Ley de Compras de la ASG no aplica a licitaciones de bienes y servicios profesionales. De conformidad, y en atención a lo atinente al recurso ante nos, resulta importante consignar que, las enmiendas a la Sección 3.19, *supra,* antes resumidas atienden asuntos procesales y términos ante la ASG que corresponden a licitaciones de bienes y servicios no profesionales. En su

---

de Puerto Rico, Autoridad de Acueductos y Alcantarillados, Autoridad de Energía Eléctrica, Autoridad de Carreteras y Transportación, Corporación del Proyecto ENLACE del Caño Martín Peña, la Corporación Pública para la Supervisión de Seguros de Cooperativas de Puerto Rico, programas e instalaciones de la Administración de Servicios Médicos de Puerto Rico, el Centro Médico, el Hospital Cardiovascular, el Hospital Universitario de Adultos, el Hospital Pediátrico Universitario, el Hospital Universitario Dr. Ramón Ruiz Arnau, los Centros de Diagnóstico y Tratamiento y instalaciones de discapacidad intelectual adscritos al Departamento de Salud, el Hospital Industrial y dispensarios regionales e intermedios, la Corporación del Fondo del Seguro del Estado, la Autoridad Metropolitana de Autobuses y la Autoridad de Edificios Públicos.
No obstante, las entidades exentas tienen que realizar sus procesos de licitación acogiendo los métodos de licitación establecidos en esta Ley. Además, las mismas deben acogerse a las categorías previamente licitadas y contratos otorgados por la Administración de Servicios Generales.

consecuencia y en ausencia de una legislación especial sobre licitaciones de servicios profesionales, corresponde puntualizar que, en *Municipio de Aguada v. W. Construction, LLC y otro,* supra, el Tribunal Supremo resolvió que, debido a que en Puerto Rico no existe una legislación que regule los procesos de subasta o RFP de manera uniforme, la Sección 3.19 de la LPAU fue enmendada para delegar en cada agencia gubernamental la reglamentación de los procesos de subasta formal y de requerimiento de propuestas.

Establecido el desarrollo estatutario y derecho aplicable procedemos a resolver.

**III.**

Surge del recurso de epígrafe que Custom Group cuestiona, como primer error, la especificidad y adecuacidad de la notificación de la adjudicación que PRIDCO emitió el 17 de octubre de 2024 y notificó el 18 de octubre de 2024. En particular, que expone un término incorrecto para acudir en revisión judicial y que hace referencia a la posibilidad de acudir en revisión administrativa ante la Junta Revisora de la ASG, a pesar de que la Ley Núm. 73-2019, no aplica frente a un requerimiento de propuestas sobre servicios profesionales.

En su segundo señalamiento de error, Custom Group argumenta que, PRIDCO actuó sin jurisdicción al emitir una segunda notificación de adjudicación sin haber recibido el mandato. Añade que, PRIDCO emitió la segunda notificación mientras estaba pendiente ante el Tribunal de Apelaciones el Recurso Núm. KLRA202400510, en el cual, Custom Group cuestionó la adjudicación de la notificación emitida el 7 de agosto de 2024.

En el *Alegato Suplementario* el recurrente reitera que, PRIDCO no tenía autoridad para emitir una segunda notificación mientras estaba pendiente ante el Tribunal de Apelaciones la revisión de la notificación, emitida el 7 de agosto de 2024 (Recurso Núm. KLRA202400510). Discute que, la adjudicación del RFP no comienza hasta tanto la determinación de PRIDCO sea notificada

adecuadamente. Custom Group añade que, la notificación objeto de este recurso adolece de las siguientes deficiencias: no advierte adecuadamente el derecho a solicitar revisión judicial, el término aplicable y la fecha que activa dicho plazo; carece de los criterios y factores técnicos que PRIDCO evaluó al seleccionar el licitador agraciado; no contiene una síntesis de las propuestas; entre otras. Por entender que la notificación defectuosa no activa los términos, el recurrente sostiene que el recurso de epígrafe es oportuno.

Al oponerse al recurso de Custom Group, PRIDCO argumenta que, la notificación impugnada cumple con los requerimientos del derecho vigente. Arguye que, el recurso de epígrafe es tardío toda vez que el recurrente lo presentó vencido el término de treinta (30) días que dispone nuestro ordenamiento jurídico. Discute que, PRIDCO retuvo su jurisdicción y estaba facultado a emitir una segunda notificación, debido a que, el recurso previamente instado (Recurso Núm. KLRA202400510) era prematuro, y solo procedía su desestimación.

En su *Alegato Suplementario,* PRIDCO asegura haber cumplido con los requisitos para emitir una notificación adecuada. Reitera que, es tardío el recurso del recurrente. Destaca que, no existe controversia en cuanto a que el RFP objeto de este recurso es sobre un servicio profesional, por lo cual, admite que este asunto no se encuentra bajo la jurisdicción de la Junta Revisora de la ASG. Por último, reconoce que, previo a diciembre de 2024, PRIDCO no tenía un reglamento que regulara la selección de proveedores de servicios profesionales.

Tras nuestra evaluación sosegada de la adjudicación del RFP NÚM: PRIDCO-FEMA-RFP-2023-03 que PRIDCO notificó, el 18 de octubre de 2024, constatamos que, conforme a los estatutos vigentes al momento de dicha adjudicación, la misma no constituye una notificación conforme exige la normativa aplicable.

En primer lugar, PRIDCO omitió incluir en la notificación de la adjudicación un resumen fehaciente de las propuestas de cada

licitador, según lo requirió el Tribunal Supremo al resolver *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 536. Reconocemos que, PRIDCO resumió sus observaciones en cuanto a las tres propuestas consideradas, no así el contenido de cada una.[5]

En otro aspecto, la notificación de la adjudicación que hoy evaluamos establece de forma generalizada los factores o criterios analizados por PRIDCO al adjudicar el RFP. Si bien es cierto que el dictamen impugnado contiene una tabla con la lista de los criterios evaluados y su correspondiente valor porcentual, no surge el análisis que PRIDCO efectuó sobre las propuestas sometidas, a la luz de cada criterio evaluado y el porciento adjudicado a cada uno. Lo antes, a los efectos de que los foros judiciales podamos revisar adecuadamente los méritos de la decisión administrativa.

Concretamente, PRIDCO descartó la propuesta de Custom Group por los siguientes fundamentos:

> *[t]he proposal was very comprehensive and met PRIDCO´s scope and objectives. Unlike the selected proponent, they did not present a fairly open and flexible proposal that would allow PRIDCO to adjust resources according to its needs. The rate for resources was the lowest compared to the other Proponents. However, during the interview, they lacked confidence and expertise in relation to regulatory processes and customary practices in managing projects with federal funds.*
> *[…]*
> *As corollary, even though Custom Homes, Inc. proposal may seem the least expensive at first, the selected proponent´s willingness to phase out during the course of time would prove a least expensive option for PRIDCO, and consistent with its best interests.[6]*

Comprobamos de lo anterior, que PRIDCO no logró informar de forma fehaciente los datos que fundamentan su análisis. Identificó que la propuesta de Custom Group carecía de flexibilidad a los efectos de ajustar los recursos a las necesidades. Puntualizó además que, producto de la entrevista, el recurrente demostró falta de conocimiento y de confianza sobre los procesos regulatorios y sobre el manejo de proyectos sufragados con fondos federales. Los

---

[5] Apéndice, págs. 5-6.
[6] Apéndice, pág. 6.

mencionados factores son representativos de un análisis de carácter general. PRIDCO no detalló cuáles fueron los defectos de la propuesta de Custom Group que provocaron que no fuese favorecido, a pesar de haber sido el licitador con la puntuación más alta. Tampoco abundó sobre las puntuaciones o el análisis para contrastar las propuestas de cada licitador y los fundamentos para no adjudicar ciertos renglones a favor de los licitadores participantes. Lo antes, en aras de notificar con transparencia sus conclusiones y así garantizar un debido proceso de ley.

Superados los asuntos atinentes a los aspectos sustantivos de la notificación, nos corresponde justipreciar si la agencia recurrida cumplió con incluir, en su adjudicación, los requerimientos y advertencias procesales en la notificación propiamente.

Con respecto al derecho a impugnar una adjudicación, PRIDCO dispuso en el dictamen recurrido que, a tenor de la Sección 3.19 de la LPAU, *supra,* el licitador perdidoso puede solicitar reconsideración ante el director ejecutivo de PRIDCO o, en la alternativa, puede acudir en revisión administrativa ante la Junta Revisora de la ASG, dentro del término de veinte (20) días desde el archivo en autos de la copia de la notificación. Sin embargo, tal advertencia no tiene cabida en nuestro ordenamiento jurídico. Nos explicamos.

Es de notar que, el requerimiento de propuestas objeto del presente recurso es sobre un **servicio profesional** y a esos efectos el RFP fue adjudicado por la propia agencia recurrida. Así lo reconocieron ambas partes durante la vista oral celebrada ante esta Curia. Al respecto, la Ley de Compras de la ASG expresamente dispone, en su Artículo 3, lo siguiente: "[l]as disposiciones de esta Ley regirán los procesos de compras y subastas de bienes, obras y **servicios no profesionales** en todas las Entidades Gubernamentales y las Entidades Exentas." (Énfasis suplido.) 3 LPRA sec. 9831b. A su vez, el Tribunal Supremo resolvió en *St. James Sec. v. AEE,* supra, que las contrataciones de **servicios**

**profesionales** no están sujetas a revisión por parte de la Junta Revisora de Subastas de la Administración de Servicios Generales. De conformidad, la referencia a la Ley de Compras de la ASG en la notificación del RFP del 18 de octubre de 2024, constituye un defecto que incide sobre la validez de la adjudicación impugnada porque resulta inaplicable al RFP en controversia.[7]

Debemos resaltar que, posteriormente, en su *Alegato Suplementario* y durante su ponencia en la vista oral celebrada ante esta Curia, el 26 de marzo de 2025, PRIDCO reconoció que el RFP objeto de este recurso no está sujeto a revisión ante la Junta Revisora de la ASG por tratarse de un servicio profesional, y expuso que, la Sección 3.19 de la LPAU aplica a compras y subastas de bienes, obras y servicios no profesionales.

De otra parte, se desprende de la notificación objeto de este recurso que la agencia recurrida advirtió al licitador perdidoso que puede solicitar reconsideración ante el director ejecutivo de PRIDCO, dentro del término de veinte (20) días, desde la fecha de su notificación. Ello, sin citar la disposición legal que da base a tal remedio y sin considerar que, el término que provee la Sección 3.19, *supra,* para instar una solicitud de revisión administrativa ante la Junta Revisora de la ASG no aplica a las licitaciones sobre servicios profesionales. Puntualizamos que, al 18 de octubre de 2024, cuando PRIDCO notificó la adjudicación del RFP aquí impugnada, la agencia no tenía un reglamento vigente que aplicar. Nótese que, el reglamento intitulado *Procedimiento Interno para la Evaluación y Selección de Proveedores de Servicios Profesionales cuya cuantía sea de $250,000 o más, y aquellos de menor cuantía cuando así se determine por el Departamento de Desarrollo Económico y Comercio (DDEC) y sus Entidades Operacionales y Adscritas,* entró en vigor durante el mes de diciembre de 2024, con posterioridad a la notificación objeto de este recurso.

---

[7] Apéndice, pág. 6.

A pesar de que, Custom Group no procuró reconsideración ante el director ejecutivo y, a la fecha de los hechos de este caso, dicha alternativa no correspondía a reglamentación alguna que lo sustentara, consideramos que una correcta notificación puede incluir el derecho de un licitador perdidoso a cuestionar la adjudicación de la subasta o RFP sobre servicios profesionales ante la entidad que haya evaluado las distintas propuestas, previo a recurrir ante el Tribunal de Apelaciones en revisión judicial. Sobre este asunto, en particular, las partes exponen posturas distintas.

Por una parte, Custom Group arguye que, en efecto las enmiendas a la Sección 3.19, *supra,* eliminaron el derecho de reconsideración en licitaciones de servicios profesionales. De otra parte, PRIDCO sostiene que, en ausencia de un lenguaje claro en la Sección 3.19, *supra,* sobre reconsideraciones de licitaciones de servicios profesionales corresponde aplicar únicamente lo establecido en la Sección 3.15 de la LPAU, 3 LPRA sec. 9655, que versa sobre reconsideraciones de las determinaciones administrativas en general y permite términos más extensos que lo que se permiten en procesos sobre servicios no profesionales.

Hemos evaluado concienzudamente las posturas de las partes con particular atención a la legislación antes resumida y su exposición de motivos, así como, el cuadro fáctico de la causa ante nos. Colegimos que, las posturas de ambas partes no nos convencen. De un estudio de la totalidad de las normas correspondientes no identificamos que el legislador haya establecido -de forma fehaciente- que se elimina el derecho de los licitadores perdidosos a cuestionar una adjudicación de un RFP por servicios profesionales ante la agencia adjudicadora, antes de recurrir ante esta Curia en revisión judicial. Lo que sí establece el estatuto es una orden a las agencias exentas de la Ley de Compras de la ASG o, en su defecto, a las exentas por tratarse de servicios profesionales, a adoptar medidas o reglamentos a esos fines y que resulten en armonía con los propósitos establecidos en nuestro ordenamiento

jurídico sobre licitaciones públicas. De hecho, así lo instruye la Orden Ejecutiva antes citada.

Conforme a la normativa antes expuesta, reconocemos el interés apremiante gubernamental de proteger los fondos públicos, fomentando la libre y diáfana competencia, entre el mayor número de licitadores posibles. Lo antes, garantizando un debido proceso de ley a todos los participantes con transparencia, eficiencia, sensibilidad y responsabilidad fiscal.[8] De ahí, corresponde a las agencias adoptar los reglamentos necesarios para establecer los términos y procesos a seguir -sobre licitaciones de servicios profesionales- que resulten en armonía con los términos y procesos adoptados en la ley. Como se sabe, el poder de reglamentación de las agencias gubernamentales debe ir en concordancia con lo que establece la LPAU y la jurisprudencia aplicable. Sobre este particular, el Tribunal Supremo puntualizó que "[l]as agencias tienen el deber de especificar, mediante reglamentación, los criterios esbozados de forma muy general en la legislación [,] para evitar una aplicación arbitraria e injusta y proveer guías adecuadas para que las partes afectadas por las acciones de la agencia administrativa estén debidamente informadas del estado de derecho vigente. (Nota omitida.) *Báez Díaz v. E.L.A.*, 179 DPR 605, 619 (2010).

En la presente causa, PRIDCO admitió no tener, a la fecha de los hechos, un reglamento vigente para licitaciones de servicios profesionales. Por tanto, nuestra determinación se limita a identificar el error, sin prejuzgar los méritos y el contenido del reglamento adoptado con posterioridad a la adjudicación del RFP el 17 de octubre de 2024, notificada el 18 de octubre de 2024. Cónsono con lo anterior, tampoco nos convence la postura de la agencia recurrida que promueve que esta Curia adopte los términos y procesos atinentes a las reconsideraciones establecidas en la Sección 3.15 de la LPAU, *supra.* Ello, toda vez que, dicha sección

---

[8] Véase Exposición de Motivos de la Ley 48-2024, Ley 153-2024 y Boletín Administrativo Núm. OE 2021-029.

versa sobre los procesos ordinarios de reconsideraciones de las determinaciones administrativas generales con términos extensos y no corresponde a subastas o RFP de servicios profesionales.

Atendido lo relacionado al tema de reconsideración de una adjudicación de una subasta o RFP de servicios profesionales, nos corresponde ahora evaluar si la notificación impugnada cumple con lo requerido en cuanto a la revisión judicial ante esta Curia.

Notamos que, la notificación objeto de la presente revisión, PRIDCO cita lo establecido en la Sección 4.2 de la Ley Núm. 38–2017 y advierte que, el licitador perdidoso puede recurrir ante el foro apelativo correspondiente ("appropriate appellate body"), dejando a su discreción identificar cuál es el organismo administrativo apelativo adecuado para instar su solicitud de revisión.

Conforme a lo reseñado en el acápite anterior, la LPAU ha sido enmendada en múltiples ocasiones. En su consecuencia, la Ley Núm. 38-2017, según citada por PRIDCO, no resulta aplicable a la fecha de la adjudicación de la licitación impugnada en octubre de 2024. No obstante, lo anterior, reconocemos que, en su *Alegato Suplementario*, la agencia recurrida correctamente expuso que los términos expuestos en la Sección 3.19 corresponden a procesos ante la ASG por servicios no profesionales. Como resultado, la agencia recurrida sostuvo que, procede aplicar a este caso el término de treinta (30) días para la revisión judicial que establece la Sección 4.2 de la LPAU, *supra.*

En atención a las enmiendas a las Secciones 3.19 y 4.2 de la LPAU, *supra,* y habida cuenta de que el RFP que nos ocupa es sobre un servicio profesional, concluimos que ofrecer y permitir una solicitud de revisión administrativa ante la Junta Revisora de la ASG no es un remedio viable para los licitadores perdidosos en la presente causa. Tratándose de una licitación de un servicio profesional, cuya adjudicación fue notificada por PRIDCO y no fue

adjudicada ni notificada por la Junta Revisora de la ASG,[9] colegimos que, el plazo aplicable para presentar una revisión judicial ante esta Curia, sobre el RFP objeto de este recurso es el término de treinta (30) días que establece la Sección 4.2 de la LPAU, *supra,* el cual no ha comenzado a transcurrir ante los defectos en la notificación antes identificados.

Por último, debemos señalar que, PRIDCO también omitió establecer cuál es la fecha del archivo en autos de la copia de la notificación, a partir de la cual se activa el plazo para acudir en revisión judicial ante el Tribunal de Apelaciones. Lo antes, en contravención a lo requerido por nuestro más Alto Foro en *St. James Sec. v. AEE,* supra, pág. 379.

Las deficiencias antes desglosadas invalidaron los efectos de la presente notificación de adjudicación del RFP de PRIDCO, notificada el 18 de octubre de 2024. El primer error señalado se cometió.

Como segundo error, Custom Group discute que PRIDCO debió abstenerse de emitir una nueva notificación subsanando los defectos de la primera, hasta tanto recibiera el mandato del Tribunal de Apelaciones. Cabe recordar que, la primera notificación de adjudicación de PRIDCO, con fecha del 5 de agosto de 2024, fue objeto de revisión ante esta Curia mediante el Recurso Núm. KLRA202400510. En aquella ocasión, ante las deficiencias de la notificación admitida por la agencia recurrida, desestimamos el recurso por falta de jurisdicción por prematuro, al amparo de la Regla 83(B)(1) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83(B)(1), mediante una *Sentencia* notificada el 14 de noviembre de 2024.

En el ínterin, y antes de esta Curia emitir el referido pronunciamiento, PRIDCO emitió y notificó una segunda

---

[9] Cabe señalar que surge de la Sección 3.19 de la LPAU, *supra,* que "[l]as Entidades Exentas de la Ley 73-2019 [Ley de Compras de la ASG], deberán además cumplir con los **términos y procesos** que se establecen en esta Ley y en la Ley 73-2019."

adjudicación del RFP en controversia, el 18 de octubre de 2024. Lo antes, luego de dejar sin efecto la primera notificación y admitir que esta adolecía de deficiencias. Si bien es cierto que la presentación de un recurso de revisión judicial ante esta Curia no tiene el efecto de paralizar los procesos ante el foro administrativo, en el presente caso, pendiente el recurso ante nos, se suscitó una nueva controversia derivada de la segunda notificación de adjudicación que emitió PRIDCO. Sobre tales bases, resolvemos que el segundo señalamiento de error no fue cometido.

En fin y cónsono con la normativa expuesta, ante la ausencia de una notificación adecuada que cumpla con todos los requerimientos esbozados, la notificación de la adjudicación que PRIDCO notificó el 18 de octubre de 2024 carece de eficacia. En su consecuencia, la adjudicación objeto de este recurso no surte efecto jurídico alguno y el plazo para acudir en revisión judicial no ha comenzado a transcurrir. Es preciso resaltar que, la jurisdicción asumida en esta ocasión se limita a la revisión de la notificación y no a los méritos de la adjudicación del RFP de epígrafe.

**IV.**

Por los fundamentos expuestos, declaramos que la notificación de la adjudicación del Requerimiento de Propuesta Núm. PRIDCO-FEMA-RFP-2023-03 (RFP), notificada el 18 de octubre de 2024, resulta ser inoficiosa por lo que se revoca, devolvemos este asunto ante PRIDCO y nos abstenemos de revisar cualquier otro asunto atinente a los méritos de la determinación de la agencia recurrida sobre el RFP impugnado.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones