ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUIS VALLE OLMO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202500190 | Revisión procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre: Apelación de querella<br><br>Número de Querella: 316-24-182 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Compareció el recurrente, el Sr. Luis Valle Olmo (en adelante, "señor Valle Olmo" o "recurrente") quien se encuentra confinado bajo la custodia del Departamento de Corrección y Rehabilitación (DCR), mediante recurso de *Revisión Judicial* suscrito el 24 de marzo de 2025 y presentado el 26 de marzo de 2025. Nos solicitó la revocación de la determinación emitida por el DCR el 17 de enero de 2025.[2] Mediante ese dictamen, se le halló incurso en violación del Código 109 del Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional de 8 de octubre de 2020.

Por los fundamentos que expondremos a continuación, se **confirma** la determinación de la agencia administrativa.

**-I-**

El 30 de septiembre de 2024, el agente Eric Durán (en adelante, "agente Durán") presentó un *Informe Disciplinario* (en adelante, "la querella") contra el señor Valle Olmo, un miembro de

---

[1] Mediante la Orden Administrativa DJ 2024-062C emitida el 6 de mayo de 2025, se enmendó la constitución de los paneles del Tribunal de Apelaciones.
[2] Apéndice del recurrente, anejo I, págs. 4-5.

la población correccional de la Institución Guerrero 304 Aguadilla.[3] Por virtud de la querella, el agente Durán alegó que, el 29 de septiembre de 2024, el señor Valle Olmo fue visto por el agente Freddy Cordero Ruiz (en adelante, "agente Cordero") cuando el primero extrajo un cable largo por debajo de una mesa en la celda #41 y lo colocó bajo su colchón. El agente Cordero procedió a ocupar el objeto y este resultó ser un cargador de teléfono celular. La querella imputó que el señor Valle Olmo incurrió en conducta prohibida que violentaba los Códigos 109, 106 y 200 del Reglamento Núm. 9221 del 8 de octubre de 2020.

Seguidamente, el 2 de octubre de 2024, comenzó la respectiva investigación que culminó el 16 de octubre de 2024. En esta, el señor Valle Olmo reiteró su versión de los hechos mientras que el agente Cordero recalcó lo observado por él durante el transcurso de los hechos.

El DCR celebró una vista disciplinaria el 8 de enero de 2025. En esta audiencia, el señor Valle Olmo compareció y sostuvo que la querella era una defectuosa y no admitió las violaciones imputadas. Empero, luego de examinar el expediente, el DCR concluyó que las acciones del recurrente violentaron el Código 109, pero que no incidieron sobre los Códigos 106 y 200. Subsiguientemente, la agencia emitió una *Resolución* que le imponía como sanción la suspensión durante sesenta (60) días del privilegio de visita, comisaría, recreación activa, correspondencia (excluyendo la legal), actividades especiales y cualquier otro privilegio que concediera la institución.[4]

---

[3] *Íd.*, pág. 6.
[4] *Íd.*, págs. 4-5.

Inconforme, el recurrente presentó una *Solicitud de Reconsideración* el 22 de enero de 2025.[5] Esta fue rechazada de plano el 18 de marzo de 2025 mediante una *Determinación.*[6]

Insatisfecho aún, el señor Valle Olmo entregó su recurso de revisión administrativa ante el DCR el 24 de marzo de 2025. Este fue presentado ante esta curia el 26 de marzo de 2025. Aun cuando el recurso no contiene señalamiento de error en específico, el recurrente arguyó que el DCR erró al hallarlo incurso por violación al Código 109.

Por su parte, el 16 de mayo de 2025, el DCR acudió ante nos, por medio de la Oficina del Procurador General, y presentó su *Alegato en Oposición.*

Con el beneficio de la comparecencia escrita de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Revisión administrativa**

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023).

---

[5] *Íd.,* pág. 7.
[6] *Íd.,* pág. 3.

En nuestro ordenamiento jurídico, se ha reiterado que, los tribunales apelativos conceden gran consideración y deferencia a las determinaciones de las agencias debido a su vasta experiencia y conocimiento especializado. *Íd.,* pág. 114. Más aun, cuando tales determinaciones son interpretaciones de las leyes que administra la agencia en cuestión. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAU establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675. Por consiguiente, existe una presunción de legalidad y corrección que reviste a las determinaciones de hechos elaboradas por las agencias administrativas, salvo la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019). En otras palabras, la parte que impugna las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

De otro lado, la LPAU sostiene que las conclusiones de derecho realizadas por los foros administrativos serán revisables en todos sus aspectos. 3 LPRA sec. 9675. Esto es, el tribunal revisor no tiene que otorgarle deferencia a las conclusiones o interpretaciones de derecho formuladas por las agencias administrativas. *Vázquez v. Consejo de Titulares et al.*, 2025 TSPR 56, pág. 28. Sobre esto, el tribunal revisor deberá ejercer un juicio independiente para determinar si la actuación de la agencia

administrativa está dentro del marco de sus facultades estatutarias. *Íd.* Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 843 (2021).

Además, el tribunal revisor no dará deferencia a los procedimientos administrativos si al examinar el dictamen recurrido determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114. Así pues, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, 839 (2021).

En síntesis, la LPAU establece que el tribunal revisor se ceñirá a evaluar lo siguiente: (i) si el remedio concedido fue apropiado; (ii) si las determinaciones de hecho están sostenidas por evidencia sustancial que obre en el expediente administrativo; y (iii) si se sostienen las conclusiones de derecho realizadas por la agencia. 3 LPRA sec. 9675.

**B. El procedimiento disciplinario correccional**

El Reglamento Núm. 9221 de 8 de octubre de 2020 del DCR, conocido como "Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional" (en adelante, "Reglamento Núm. 9221") tiene la finalidad de establecer normas y procesos para facilitar la imposición medidas disciplinarias para que impere el orden en las instituciones correccionales del país.

Las querellas son el mecanismo disciplinario utilizado para la investigación de incidentes en las instituciones del DCR. Cualquier persona puede presentar una querella contra un miembro de la población correccional en cualesquiera de las siguientes instancias:

1. Cuando sea víctima de un acto o incidente prohibido provocado por un miembro de la población correccional; *[sic]*
2. Cuando sea testigo de un acto o incidente prohibido, o infracción a las normas y reglamentos del Departamento de Corrección y Rehabilitación por parte de un miembro de la población correccional[;]
*3.* Tiene motivo fundado para creer que un miembro de la población correccional cometió alguna infracción a las normas o reglamentos del Departamento de Corrección y Rehabilitación; *[sic]*
4. Cuando tenga conocimiento de que un miembro de la población correccional utilizó o presentó una alegación falsa que provocó o intentó provocar el inicio de una investigación por parte de la Oficina de Investigaciones del Sistema Correccional (OISC) o de cualquier otro foro investigativo, de cuyo informe se desprenda, que la alegación se realizó a sabiendas de su falsedad[;]
5. Cuando tenga conocimiento de que un miembro de la población correccional provocó o intentó obtener algún cambio o traslado, transacción de personal o cualquier otro en su beneficio basado en una alegación a sabiendas de su falsedad[, o]
6. Cuando se tenga conocimiento de actos que alteren la provisión de servicios, ante reclamos viciosos, falsos o improcedentes por parte de uno o varios miembros de la población correccional. Regla 6 del Reglamento Núm. 9221.

A esos fines, según la Regla 6 (A) del Reglamento Núm. 9221, *supra*, es imprescindible que la querella contenga: (1) una descripción apropiada y detallada del incidente, incluyendo su fecha, hora y lugar; (2) el nombre del querellado; (3) los nombres de los testigos, de haberlos; (4) la evidencia recolectada; (5) el manejo de la prueba; (6) el código y el nivel correspondiente a la acción prohibida imputada; (7) el nombre del querellante; (8) la identificación precisa del querellante, incluyendo, de aplicar, número de placa, puesto o lugar de trabajo; (9) la fecha de radicación de la querella, y (10) de haber información confidencial, se deben respetar las directrices impuestas en las Reglas 31 y 32 del Reglamento.

Luego de su radicación, el querellado será emplazado con una copia de la querella dentro de dos (2) días laborables. *Íd.*, Regla 10.

Posterior a esto, la querella debe ser investigada por un Oficial de Querellas. El proceso de investigación puede comprender:

1. Entrevistar e interrogar a toda persona relacionada, directa o indirectamente con los hechos imputados, incluyendo al miembro de la población correccional querellado o los testigos solicitados por [e]ste.
2. El querellado debe ser orientado sobre su derecho a guardar silencio y podrá recibir asistencia del Oficial de Querellas.
3. Si el querellado quiere hacer una declaración, podrá completar el formulario correspondiente. Si el querellado no sabe leer o escribir, el Oficial de Querellas deberá tomar la declaración de manera detallada, con cualquier información adicional que puede observar con respecto al comportamiento del miembro de la población correccional durante la entrevista.
4. El Oficial de Querellas deberá investigar en detalle la versión de hechos presentada por el querellado.
5. El Oficial de Querellas le facilitará el formulario correspondiente y obtendrá las declaraciones de estos testigos; y las respuestas a las preguntas formuladas por el miembro de la población correccional.
6. El Oficial de Querellas deberá registrar las declaraciones de los testigos de manera exacta y detallada. No obstante, los testigos tienen la opción de presentar su declaración por escrito o responder directamente a las preguntas realizadas.
7. El Oficial de Querellas verificará el manejo y disposición correcta de la prueba/evidencia y preparará un informe de ello.
8. El Oficial de Querellas podrá comentar sobre asuntos que haya podido percibir personalmente durante la investigación, incluyendo, pero sin limitarse, al comportamiento o semblante del querellado o de un testigo, aspectos de la distribución de la planta física de la institución correccional u otros similares que puedan ser pertinentes al caso.
9. El Oficial de Querellas redactará un informe completo y detallado que contenga las declaraciones de todos los testigos y la prueba/evidencia recopilada.
10. De ser necesario, el Oficial de Querellas podrá solicitar información a la Unidad de Servicios Sociopenales, Unidad de Récord Criminal, Programa de Comunidad, Programa de Desvío y Comunitarios y Área Médica.
11. Los parámetros para el uso y el manejo de información confidencial se encuentran en la Regla 31 y Regla 32 de este Reglamento.
12. Si el Oficial de Querellas presenció o tiene conocimiento personal del incidente que se encuentra ante su consideración para la correspondiente investigación, deberá inhibirse de ese caso en particular, y otro Oficial de Querellas que esté asignado a la institución tomará la investigación a su cargo. En el caso [de] que no haya otro Oficial de Querella de la misma institución[,] podrá asistirle uno de otra institución correccional. *Íd.,* Regla 12.

Al finalizar la investigación, el Oficial de Querellas citará al querellado a una vista disciplinaria, indicando la fecha y hora, conducta imputada, las infracciones correspondientes, derecho a ser representado y las consecuencias de ausentarse a la audiencia. *Íd.*, Regla 24.

Es requisito que el querellante y el querellado acudan a la celebración de la audiencia, salvo que el querellado haya renunciado expresamente a ese derecho, se encuentre prófugo de la justicia o se excluya por razones de seguridad. *Íd.*, Regla 25. Si ha de ausentarse, el querellado deberá notificarlo por escrito. *Íd.* Además, el querellado no podrá recibir asistencia de otro miembro de la comunidad correccional. *Íd.*

El Oficial Examinador tiene la facultad de determinar si la comparecencia de un testigo procede en la vista; los testigos estarán sujeto a interrogatorio. *Íd.* A esos fines, un Oficial Examinador puede denegar la comparecencia de un testigo si su testimonio resultara repetitivo o que "su conocimiento sobre el incidente surja de manera clara de la querella disciplinaria, [de] documentos complementarios, o del informe del Oficial de Querellas". *Íd.*, Regla 31. Empero, esta decisión "dependerá de las circunstancias particulares del caso y [de] la información que [el testigo] posea". *Íd.*

Durante la vista, el querellado podrá declarar, presentar prueba a su favor o permanecer en silencio, sin que esto último sea utilizado en su contra. *Íd.*, Regla 25. El Oficial Examinador debe inhibirse si tiene conocimiento personal sobre el suceso que originó la querella. *Íd.*

El Oficial Examinador ha de emitir su resolución basada en la prueba desfilada en la vista junto con el expediente del incidente. *Íd.*, Regla 28. De encontrar que se incurrió en alguna conducta no permitida, impondrá las sanciones contenidas en el propio

Reglamento. *Íd.* Lo imputado debe haber sido probado mediante el estándar evidenciario de preponderancia de la prueba. *Íd.*

De otro lado, entre las conductas prohibidas por el Reglamento Núm. 9221, *supra,* está la posesión, distribución, uso, venta o introducción de accesorios de teléfonos celulares o equipo de telecomunicaciones. Puntualmente, el Código 109 dispone que: "[s]e prohíbe la posesión, distribución, uso, venta, [o] introducción de material asociado a teléfonos celulares o equipos de telecomunicaciones; incluyendo sin limitarse, a cargadores audífonos, fusibles, bujías, cables, baterías, tarjetas de memoria, entre otros". *Íd.*, Regla 14.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

De entrada, autorizamos la litigación *in forma pauperis* y por derecho propio del recurrente, toda vez que no posee los medios económicos para sufragar los costos del litigio. A continuación, procedemos atender el recurso de epígrafe.

En síntesis, el señor Valle Olmo alegó que hubo defectos en la querella incoada, específicamente en sus incisos 4, 5 y 16, y que no se le informó personalmente sobre su comisión de un acto no permitido y que, por ende, debe dejarse sin efecto la sanción disciplinaria impuesta. Por estas razones, nos solicitó la revocación de determinación de la agencia administrativa y, con esto, la devolución de sus privilegios.

Por su parte, la Oficina del Procurador General indicó que la agencia administrativa le notificó al señor Valle Olmo sobre los actos prohibidos imputados conforme a derecho. Por esto, la querella cumple con los requisitos reglamentarios y con el debido proceso aplicable porque contiene toda la información imperativa, según

expuesta en la Regla 6 (A) del Reglamento Núm. 9221, *supra.* Argumentó, además, que no hay duda de que el recurrente violentó el Código 109, debido a que se le encontró un cargador de teléfono celular en su celda, lo cual fue probado bajo el estándar aplicable de preponderancia de la prueba. Tiene razón, veamos.

Según explicamos, el Reglamento Núm. 9221, *supra*, dictamina las normas y procedimientos a seguir en la imposición de medidas disciplinarias contra la población carcelaria. A esos efectos, regula el proceso para radicar una querella. El Reglamento Núm. 9221, *supra*, hace hincapié en que una querella disciplinaria contra un confinado debe contener: (1) una descripción apropiada y detallada del incidente, incluyendo su fecha, hora y lugar; (2) el nombre del querellado; (3) los nombres de los testigos, de haberlos; (4) la evidencia recolectada; (5) el manejo de la prueba; (6) el código y el nivel correspondiente a la acción prohibida imputada; (7) el nombre del querellante; (8) la identificación precisa del querellante, incluyendo, de aplicar, número de placa, puesto o lugar de trabajo; (9) la fecha de radicación de la querella, y (10) de haber información confidencial, se deben respetar las directrices impuestas en las Reglas 31 y 32 del Reglamento. Examinaremos estos requisitos a la luz de la información contenida en la querella.

El primer requisito sobre la descripción detallada del incidente se cumplió. Concretamente, el encasillado 11 precisa:

> Durante un registro de 5 celdas en el 8AII[,] observo que el confinado Luis Valle Olmo camin[ó] hacia la celda 41, ya en el interior, este se dobla y saca de debajo de la mesa un cable largo y[,] acto seguido[,] lo pone debajo del mattre, *[sic]* le indico al oficial Cordero que verificara, y al verificar este me indica que ocup[ó] un cargador de tel[é]fono celular.

Esta descripción, junto con la especificación de la fecha y hora de lo ocurrido, 29 de septiembre de 2024 a las 10:00 AM, resulta suficiente. Asimismo, el segundo requisito sobre el nombre del querellado se cumplió, al señalar que se trataba del confinado Luis

Valle Olmo. El tercer requisito sobre los nombres de los testigos se satisfizo, al querellante haber provisto el nombre del agente Cordero, quien ocupó el cargador de teléfono celular en la celda del señor Valle Olmo. Los requisitos cuarto y quinto sobre la prueba y su manejo se cumplieron al detallar que, al ocuparse la evidencia, esta se fotografió y luego fue entregada a la comandancia. El sexto requisito se consumó al incluir que los códigos posiblemente violentados fueron los 106, 109 y 200 del Reglamento Núm. 9221, *supra*, relacionados con el contrabando peligroso, dispositivos de accesorios de teléfonos celulares o de equipo de telecomunicaciones y contrabando. El séptimo y octavo también fueron satisfechos al haber indicado el nombre del querellante, el agente Durán, junto con su número de placa y puesto. Asimismo, el noveno se consumó al detallar la fecha de radicación de la querella, el 30 de septiembre de 2024. Por último, se respetó el décimo requisito sobre el manejo de la información confidencial al esta ser anejada a la querella original en páginas independientes y en sobres sellados; estos documentos están marcados con la palabra "confidencial" en cada sobre, están firmados por el imputado e incluyen la fecha.

Así, concluimos que la querella presentada cumplió con todos los requerimientos esenciales establecidos en el Reglamento Núm. 9221, *supra*, en lo que concierne al contenido y el manejo de la evidencia, distinto a lo planteado por el señor Valle Olmo.

Por otra parte, los dictámenes administrativos gozan de una presunción de corrección y legalidad que, en este caso, puede ser rebatida por el querellado mediante la presentación de prueba en contrario. Ahora bien, como hemos esbozado, el estándar de prueba utilizado en este proceso administrativo es el de preponderancia de la evidencia. Reglamento Núm. 9221, *supra*, Regla 28. También, el Oficial Examinador debe adjudicar de acuerdo con el expediente y la prueba presentada en la vista. *Íd.*

A su vez, en lo pertinente a las querellas disciplinarias originadas en el DCR, el estándar evidenciario que rige no es el mismo que el de un procedimiento criminal, debido a que el proceso es uno de naturaleza distinta al penal en sí, por lo que las garantías del debido proceso de ley del contexto penal no operan de lleno aquí. *Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010). Empero, sí se avalan unos preceptos mínimos con los cuales se debe cumplir cabalmente: (1) la notificación del procedimiento disciplinario debe ser por escrito; (2) se le debe proveer la oportunidad al querellado de presentar testigos y prueba documental a su favor, siempre que esto no atente contra la seguridad de la facilidad correccional, y (3) el informe escrito debe exhibir los hechos debidamente fundamentados con la prueba y perfilar claramente la causa por la cual se instó la querella disciplinaria. *Íd.*, pág. 624.

Surge de la determinación recurrida que se encontró un cargador de teléfono celular debajo del colchón de la celda del señor Valle Olmo. El recurrente se limitó a alegar que la querella fue una fabricada y que el dispositivo aludido no se derivó de su celda. Asimismo, aludió a que, como no se le encontró incurso de los Códigos 106 y 200, no se le podía imponer una sanción por la violación del Código 109 porque estos están íntimamente entrelazados. Estos planteamientos no demuestran que la investigación y determinación de la agencia fue irrazonable, debido a que el DCR actuó en cumplimiento con las disposiciones reglamentarias en su proceder contra el señor Valle Olmo y tiene la autoridad para imponer las medidas disciplinarias correspondientes a las inobservancias evidenciadas.

Colegimos pues que, en el caso ante nuestra consideración, el recurrente no derrotó la presunción de corrección en cuanto la decisión administrativa, conforme con la LPAU y la reglamentación aplicable. De este modo, solo plasmó unas alegaciones que no

demostraron que el DCR actuó de manera irrazonable, ilegal o de forma arbitraria en su determinación. En virtud de la deferencia que debemos al foro administrativo y la falta de evidencia que logre rebatir la presunción de corrección que le asiste a la determinación recurrida, resolvemos que procede confirmar la misma.

### -IV-

Por los fundamentos expuestos, se **confirma** la determinación del Departamento de Corrección y Rehabilitación.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones